**James Byron WOODARD, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–428.**

Court of Criminal Appeals of Oklahoma.

June 30, 1977.

Rehearing Denied Aug. 24, 1977.

Charles F. Cox, Jr., Cox & Barr, Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., John Powers, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge.

Appellant, James Byron Woodard, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Murray County, Case No. CRF–75–28, for the offense of Unlawful Possession of LSD with Intent to Distribute. He was sentenced to serve ten (10) years' imprisonment and a fine of Ten Thousand Dollars ($10,000). From said judgment and sentence, defendant has perfected this timely appeal.

Briefly stated, the testimony at trial discloses that Sulphur Police Officer Jerry Payne, pursuant to a search warrant secured the night of April 25, 1975, based on information from an unidentified informant, searched a residence at 1008 West 10th in Sulphur the following morning. Under a sofa cushion—almost exactly where the informant has indicated—he found a bag containing eleven packages holding a total of 1,000 yellow pills. A State chemist identified the pills as LSD and said the amount was far larger than the usual number of 15 to 20 pills he is sent for testing.

In defendant's first assignment of error, he argues the trial court should have sustained his motion to suppress evidence based on an inadequate search warrant and affidavit. This assignment of error attacks

the search warrant affidavit on three grounds: (1) the affidavit was insufficient to allow a magistrate to determine whether the informant who provided the initial information to the affiant-police officer was reliable.

■ The section of the affidavit going to reliability of the informant follows:

"That affiants [sic] informant is known to affiant and has provided reliable information on two occasions [sic] in the past and that convictions have resulted from the use of said informants [sic] prior information. This information involved controlled dangerous substances and was provided within the past 18 months."

The affidavit also states that "the informant has seen the LSD and marijuana at said location." Further, the affidavit states that the affiant "has received information from other sources, who have not provided information in the past . . . "; that LSD and marijuana is located at the location or in the possession of the defendant.

The test of a search warrant and affidavit is found in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and in the leading Oklahoma case of *Guthrey v. State*, Okl.Cr., 507 P.2d 556 (1973).

We find there was sufficient evidence to declare the information reliable. Not only had he aided in two prior drug convictions, but his information was corroborated by "other sources."

(2) The affidavit was insufficient to allow a magistrate to determine if the informant had an adequate basis of knowledge. to make his information credible and worthy of belief, or as stated in *Spinelli* at page 413, 89 S.Ct. at page 587, "to judge . . . the validity of the informant's conclusion that the narcotics were where he said they were."

The defendant challenges the lack of time element in the affidavit as to when the informant saw the drugs. This would normally prove fatal to the affidavit and warrant. However, 22 O.S. 1971, § 1224.1 provides a remedy:

"Before issuing a search warrant the judge may take oral testimony, sworn to under oath, supplemental to any affidavits. Provided, however, that such oral testimony shall be recorded, such record transcribed forthwith, and filed with the affidavits to support the search warrant."

■ Whenever possible the recording and transcription of such oral testimony should be done at the time the affidavit is presented to the magistrate. However, exigent circumstances may exist such as in the case at bar-when a reporter cannot be present. In such cases we deem it substantial compliance with 22 O.S.1971, § 1224.1 if the recording, transcription and filing of oral testimony supporting a search warrant affidavit take place after the fact. We note this should only be done to meet the ends of justice, and only when no other method is possible.

■ In the post appeal evidentiary transcript, Assistant District Attorney Paul Reed testified he, Officer Payne and Judge William Fulton were at the Judge's house the evening of April 25, 1975, to discuss the affidavit and have the warrant signed:

"So, at that time, I said, Jerry speaking to Officer Payne, when did he say he [the informant] saw it and he answered the exact time that he said he saw it."

Judge Fulton was asked if he interpreted the date of April 25, 1975, on the affidavit to mean that the informant had seen the contraband on the premises on or near that date, and he replied he did.

Officer Payne testified the informant had viewed the contraband within 48 hours of his conversation with him on April 25.

We are therefore of the opinion that the testimony of Assistant District Attorney Reed, Judge Fulton and Officer Payne clearly establish that the informant had viewed the contraband within 48 hours prior to the communication made to the officer on April 25, 1975, and thus was sufficiently near in time to warrant the belief that the contraband was still on the premises described.

(3) The affidavit and warrant failed to adequately describe the premises to be searched.

The affidavit describes the location as "1008–10 West 10th, City of Sulphur, Sulphur, Oklahoma," and "the above described house at 1008–10 West 10th, Sulphur, Oklahoma."

Testimony reveals there are two houses at that location; 1008 West 10th and 1010 West 10th. The contraband was found at 1008 West 10th and trial testimony of Officer Payne indicates that 1010 West 10th may have also been searched.

The rule of description, as set out in *McCormick v. State*, Okl.Cr., 388 P.2d 873 (1964) is that, "[a] search warrant must so particularly describe the place to be searched that the officer can find the place without the aid of any other information save that contained in the warrant," so that no discretion is left to the officer.  at page 875.

While we agree with the defendant that the description could have been more clear, it is apparent the officers had no difficulty finding the location in that they had it under surveillance throughout the night of April 25–26. We find there was no reversible error in the description, and accordingly hold the defendant's first assignment of error to be without merit.

In his second assignment of error, defendant argues that the trial court erred in admitting into evidence two statements made by the defendant in which he indicated he was under the influence of LSD. The defendant contends the statements are irrelevant, that he was not capable of understanding the Miranda warnings and that they constituted evidence of other crimes for which he was not on trial.

When the first statement was made the defendant was not under arrest. When police stopped to talk to him about his car being stolen, " . . . he become real belligerent, he was using real foul language, and I asked him, what he had been taking, and he told me LSD. . . ." (Tr. 67).

The second statement occurred the following day in jail:

" . . . Mr. Woodard asked me for some sweet milk, and I asked him, why, and he said, that it was the only thing bring him down off his high, that it was the only thing that could kill the LSD in his system, and I got him some milk." (Tr. 75).

The court held an in camera Jackson-Denno hearing and concluded the defendant was properly advised of his constitutional rights and that the statements were spontaneous declarations and not the result of interrogation.

Concerning evidence of other, uncharged crimes, we quote from *United States v. Parker*, 469 F.2d 884 (10th Cir., 1972):

"The general rule . . . is that evidence of uncharged crimes, wrongs, or alleged prejudicial acts is inadmissible. [However, such evidence] 'may be received for the purpose of proving a common plan, scheme or design to commit the offense charged or for the purpose of proving motive, opportunity, intent, knowledge, identity, or absence of mistake, inadvertence or accident . . . .' "

In light of the above reasons we dismiss this assignment of error.

The statements by the defendant to the effect that he was under the influence of LSD provides circumstantial evidence tending to connect him with possession and knowledge of the LSD found on the premises at 1008 West 10th.

As defendant's final assignment of error he contends the court erred in overruling his demurrer to the evidence and motion for directed verdict on grounds the evidence was insufficient. The defendant contends the State failed to prove he had knowledge of the contraband, or dominion and control over the house in which the contraband was found.

Sufficiency of the evidence is a jury question, and this Court has often held that when there is some evidence to present to a jury, we will not interfere. *Box v. State*, Okl.Cr., 505 P.2d 995.

The major testimony linking the defendant with the location where the contraband was found came during the direct examination of Officer Payne:

"Q. Do you know, of your personal knowledge, who occupies these two residences?

"A. At that time, my only knowledge was that James Woodard occupied 1008 West 10th."

No objection was lodged by the defendant and there was no cross-examination on this point. As the statement remained uncontradicted, we dismiss this assignment of error.

For all the above reasons, the judgment and sentence of the defendant, James Byron Woodard, is hereby AFFIRMED.

BRETT, J., concurs.