Carlous Glen PHELPS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–126.

Court of Criminal Appeals of Oklahoma.

July 25, 1979.

Harvey D. Yost, II, and K. Perry Reed, Perry, for appellant.

Larry Derryberry, Atty. Gen., Harold T. Garvin, Jr., Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Presiding Judge:

Carlous Glen Phelps, appellant, has appealed his conviction of Murder in the First Degree and his sentence of death. The charge against the appellant stemmed from the disappearance of 11-year-old Sally Battles in Perry, Oklahoma, on April 2, 1975. On April 25, her body was found in the appellant's garage. A subsequent search of the appellant's garage and home resulted in the discovery of most of the victim's clothing and other items of evidence.

## I

■ The appellant was charged under 21 O.S.Supp.1973, § 701.1(2) and (9),[1] which was repealed by Laws 1976, 1st Ex.Sess., c. 1, § 10. At the close of the evidence, the trial court sustained the appellant's demurrer to the charge under Section 701.1(2), but overruled the demurrer as to the charge under Section 701.1(9). The appellant's first assignment of error is that the statute under which he was charged was unconstitutionally vague. In this regard, he argues that Paragraph 9 is self-contradictory in that while 21 O.S.Supp.1973, § 701.1, provided for the death penalty for murder in the first degree, Paragraph 9 incorporated into that statute a separate and distinct crime which also had a punishment provided for it, with the result that there were two possible punishments under Paragraph 9: death and ten years' imprisonment. It is asserted that there is a fatal ambiguity. We have previously considered this argument in *Jones v. State*, Okl.Cr., 542 P.2d 1316 (1975). There we held this not to be an unreasonable or arbitrary classification, and we reaffirm that holding.

Additionally, the appellant argues that a proper construction of Paragraph 9 would apply only when a child's death is caused by a parent or one acting in loco parentis. This argument was also argued and rejected in *Jones*, supra, and in *Wishon v. State*, Okl.Cr., 550 P.2d 575 (1976).

## II

The appellant attacks the search in which the body was discovered and the warrant on which the search was based.

### A

■ A review of the record on appeal shows that while the affidavit, standing alone, would be insufficient to support the warrant, the magistrate received not only the affidavit but also oral testimony by the affiant. That testimony in support of the affidavit gave the magistrate probable cause to issue the search warrant because the sheriff testified that he had been called by the appellant's wife, who had told him that the body was in the garage.

■ Title 22 O.S.1971, § 1224.1,[2] provides that a magistrate may take oral testimony

---

1. Title 21 O.S.Supp.1973, § 701.1(2) and (9), provides:

 "Homicide, when perpetrated without authority of law and with a premeditated design to effect the death of the person killed, or any other human being, is murder in the first degree in the following cases:

 \* \* \* \* \* \*

 "2. When perpetrated by one committing or attempting to commit rape, kidnapping for the purpose of extortion, arson in the first degree, armed robbery or when death occurs following the sexual molestation of a child under the age of sixteen (16) years;

 \* \* \* \* \* \*

 "9. When perpetrated against a child while in violation of Section 843, Title 21 of the Oklahoma Statutes; . . . ."

It is provided by 21 O.S.Supp.1977, § 843: "Any parent or other person who shall willfully or maliciously injure, torture, maim, or use unreasonable force upon a child under the age of eighteen (18), or who shall cause, procure or permit any of said acts to be done, shall be punished by imprisonment in the state penitentiary not exceeding ten (10) years, or by imprisonment in a county jail not exceeding one (1) year, or by a fine of not more than Five Hundred Dollars ($500.00), or both such fine and imprisonment."

2. The statute concerning oral testimony, 22 O.S.1971, § 1224.1, provides:

 "Before issuing a search warrant the judge may take oral testimony, sworn to under oath, supplemental to any affidavits. Provid-

to supplement an affidavit provided that such testimony is recorded, transcribed, and filed with the affidavit. In the instant case, the affidavit and the warrant were filed on April 25, 1975, while the transcript of the officer's testimony was filed on May 23, 1975. The appellant argues that this four-week gap renders the warrant invalid.

■■ The statute should be interpreted to produce a reasonable result and to promote, rather than to defeat, the general purpose and policy of the law. The apparent purpose of a statute will not be sacrificed to a literal construction. The transcription provision of Section 1224.1 is not a condition precedent to issuing a warrant. It may be performed at a later time so long as it is done in a timely manner and is available to any accused who wishes to challenge the sufficiency and the validity of the warrant.[3] This question was collaterally presented and answered in *Woodard v. State*, Okl.Cr., 567 P.2d 512 (1977). This Court held that Section 1224.1 has been substantially complied with if the recording, transcription, and filing of oral testimony supporting a search affidavit take place after the fact.[4]

■■ The appellant is mistaken in his interpretation of the phrase "filed with." It does not mean that the items must be filed at the same time, but rather in the same place, so that a person seeking the warrant and/or the affidavit in the file will also find the testimony. The central issue in reviewing a decision by a magistrate on an application for a search warrant is what information the magistrate had before him

when the decision was made. In this case, the magistrate had an affidavit and also testimony by the affiant showing that there was probable cause to issue a warrant. The mere fact that it took the reporter some 28 days to prepare and file a transcript of that testimony does not render invalid an otherwise valid warrant.

### B

■ Pursuant to the warrant, law enforcement officers went to the appellant's home and discovered the body of the victim in the appellant's garage. After discovering the body, the search was discontinued and their efforts directed toward finding the appellant. Subsequently, an extensive investigation was conducted, with 88 different items being seized from both the house and the garage. The appellant challenges this "blanket search" as not authorized by the warrant, because the search warrant went only to the body of the victim.[5] Once the body was found, the warrant was exhausted. The subsequent search and seizure of numerous other items can be justified, if at all, only under the rules applying to warrantless searches.

In the recent case of *Blackburn v. State*, Okl.Cr., 575 P.2d 638 (1978), the law of warrantless searches, and the requirement that there be some sort of exigent circumstances before such a search is justified, was discussed. Under the holding of that case, we believe that it was error in the instant case to conduct the warrantless search of the appellant's house and garage. There were no exigent circumstances. It is

---

ed, however, that such oral testimony shall be recorded, such record transcribed forthwith, and filed with the affidavits to support the search warrant."

3. *People v. Peck*, 38 Cal.App.3d 993, 998, 113 Cal.Rptr. 806, 809 (1974).

4. The Court in *Woodard v. State*, Okl.Cr., 567 P.2d 512 (1977), did qualify the procedure by stating it should be done only to meet the ends of justice and when no other method is possible.

5. In pertinent part, the warrant reads as follows:

"Probable cause having been shown on this date before me by the Affiant that he has received reliable information and believes that one Carlous G. Phelps has committed a felony upon the person of one Sally Battles, a female child of the approximate age of eleven (11) years, and has her body situated on the premises described as follows: . . ..

\* \* \* \* \* \*

YOU ARE THEREFORE COMMANDED at any time of the day or night to make search of said person and premises, . . . *for the described property*, . . .." (Emphasis added)

undisputed that the police had secured the premises and that the sole suspect had been taken into custody at the time the officers returned to the premises. There was no danger that other persons would be harmed, that anyone would escape, or that evidence would be destroyed. The police were able to obtain a warrant Friday morning authorizing a search of the appellant's property for, and the seizure of, the body of the victim. The officers could just as easily have obtained a warrant Friday afternoon authorizing a second search of the same property.

In *Blackburn v. State*, supra, the convictions of the defendant were reversed because the only contraband admitted into evidence was held to be inadmissible. In the instant case, however, the State presented highly incriminating evidence which was not the result of the illegal search. (The 88 different items seized from both the house and garage included various knives, miscellaneous items of men's and women's clothing, paint scrapings, a table cloth, a rug, fiberglass insulation, sections of newspapers, quarts of paint, parts of electrical motors, a pasteboard box, dirt scrapings from a shovel, and a metal pad lock.) In addition to items legally seized, there was testimony that the defendant had sole access to the garage in which the body was found.

 We are convinced after a careful review of the entire record that illegally seized evidence did not prejudice the appellant and that the jury would have returned a verdict of guilty even if the items had not been admitted. Unless there is a reasona-

ble possibility that improperly admitted evidence contributed to the conviction, reversal is not required.[6]

### III

The appellant further argues that it is unconstitutional for this Court to modify a sentence of death to a sentence of life imprisonment. See *Riggs v. Branch*, Okl.Cr., 554 P.2d 823 (1976), for discussion of this issue, in which it was held pursuant to 21 O.S.Supp.1974, § 701.1, this Court is vested with the power to modify death sentences assessed under the statute.

### IV

 It is contended that it was error for the trial court to overrule appellant's demurrer to the first count of the amended information. As previously noted, the demurrer was subsequently sustained. Relying on 22 O.S.1971, § 404,[7] the appellant claims that it is improper for the State to allege two separate offenses in the same information, and that by charging him under both Section 701.1(2) and (9) of the statute, the State did precisely that. In the recent case of *Dodson v. State*, Okl.Cr., 562 P.2d 916 (1977), Judge Brett, in a special concurring opinion, dealt with the issue of joinder of offenses and defendants. There, he noted that 22 O.S.1971, § 440, effectively repealed 22 O.S.1971, § 404, insofar as it conflicted with 22 O.S.1971, §§ 436–439. In his discussion, Judge Brett was expressing the views of the entire court, and we hereby adopt that discussion as our position on this issue. In the same series of acts or

6. *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); see also Annot., "Supreme Court Cases Determining Whether Admission of Evidence at Criminal Trial in Violation of Federal Constitutional Rule is Prejudicial Error or Harmless Error," 31 L.Ed.2d 921 (1973).

7. It is provided by 22 O.S.1971, § 404:
"The indictment or information must charge but one offense, but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or

more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, and the court or jury trying the cause may find all or either of the persons guilty of either of the offenses charged, and the same offense may be set forth in different forms or degrees under different counts; and where the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count."

transactions, 22 O.S.1971, § 436,[8] permits a defendant to be charged with more than one count in a single information. Section 404 conflicts with §§ 436–439 only in its initial clause, which states that "the indictment or information must charge but one offense."[9] In the instant case, it was not clear whether Section 701.1(2) or Section 701.1(9) was applicable law; and the defendant was, quite properly, charged with both.

## V

 The penultimate assignment of error is that statements made by the appellant to investigating officers were improperly admitted at the trial. The appellant argues that the admission was error on two grounds: that the investigating officers failed to show proper respect for the requirements of *Miranda v. Arizona*, 384 U.S. 436, 84 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and that the statements were not made voluntarily, but were obtained through pressure. In *Miranda*, the United States Supreme Court required that a person must be made fully aware of his constitutional rights before any valid interrogation may take place. The Court noted, however, that once informed, a person can waive those constitutional rights and answer questions or make a statement. A review of the record indicates that the appellant was warned of his *Miranda* rights on three separate occasions. The trial court held an in camera hearing as to the voluntariness of the statements, and in addition the jury was given an instruction on voluntariness.

We hold that the evidence was sufficient to support a finding of voluntariness.

## VI

 The appellant next assigns as error the introduction into evidence of photographs taken at the scene of the crime. He contends that the photographs were so gruesome that any probative value they may have had was outweighed by the prejudicial effect they had on the jury. In addition, the appellant maintains that the photographs had no relevance to the State's case. The general rule is that photographs should not be admitted if there is a possibility that they will cause prejudice to the defendant by arousing the emotions of the jury, unless the probative value of the photographs outweighs the possibility of prejudice.[10] In the instant case, the photographs given to the jury were relevant in that they depicted, in a way that words could not, the scene where the body was found. The pictures were not gruesome and their probative value clearly outweighed any prejudicial effect they may have had.[11]

## VII

We have carefully examined the record of this case. Although there was a partially illegal search and seizure, the evidence against the appellant which was not illegally seized was great; and the error admitting the challenged evidence was harmless. Accordingly, it is our opinion that the interests of justice will be best served by our exercising the power given us by 22 O.S.

8. Title 22 O.S.1971, § 436, provides:
 "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately, provided that all of the defendants charged together in the same indictment or information are alleged to have participated in all of the same acts or transactions charged."

9. The statute further provides as follows:

"[W]here the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, . . ."

10. See *Born v. State*, Okl.Cr., 397 P.2d 924 (1964).

11. Compare, *Pate v. State*, Okl.Cr., 361 P.2d 1086 (1961).

1971, § 1066,[12] to vacate the judgment and sentence for Murder in the First Degree and remand the case to the District Court with instructions to enter a new judgment and sentence, finding the appellant guilty of Murder in the Second Degree and imposing a sentence of not less than ten (10) years nor more than life imprisonment under the direction and control of the Department of Corrections. The new judgment and sentence is to be made available to the Warden of the State penitentiary and to the Department of Corrections, who shall correct their records to reflect the modification of the judgment and sentence herein.

As *MODIFIED* the judgment and sentence is *AFFIRMED*.

BRETT, J., concurs.

BUSSEY, J., concurs in part and dissents in part.

BUSSEY, Judge, concurring in part and dissenting in part:

Following a jury trial in the Kay County District Court, defendant was convicted of Murder in the First Degree and sentenced to suffer death. Arguing that the provisions of 21 O.S.1971, § 701.1 ¶ 9, which incorporates 21 O.S.Supp.1978, 843, applies only when a child's death is caused by a parent or one acting in loco parentis, the Appellant seeks reversal or modification of the charge to Murder in the Second Degree and the sentence to not less than ten (10) years nor more than life imprisonment. Furthermore, it is argued that the search and seizure was illegal and this case should be reversed for that reason alone. Believing that the jury verdict was correct in this case and believing that the search was reasonable within the meaning of the Fourth Amendment, I dissent.

The relevant facts are these. Sally Battles, an eleven-year-old, lived with her parents, sisters and brothers in Perry, Oklahoma. On April 2, 1975, Sally left her home to attend school. She arrived at school dressed in a red coat and hat, white levi's and blue tennis shoes. At the end of the school day, 3:00 p. m., Sally and Kimberli Kay Griffin boarded the school bus in order to go home. At approximately 3:10 p. m., Kimberli and Sally got off the school bus and walked in the directions of their respective homes. Sally's home was located beyond a vacant lot near the defendant's residence, and she was last seen walking across the vacant lot. When Sally had not arrived at her home by 5:30 p. m., her parents contacted the Perry Police Department. A search of the community commenced that day, and continued until the early morning of April 25, 1975, when the Chief of Police received a telephone call from defendant's wife. She informed him that a strong odor emanating from the garage adjacent from their home had prompted her to ask her husband, the defendant, about the source of the odor. Defendant told her that the odor was from the body of a little girl for whom the police had been searching. Based on this information a search warrant was issued directing the law enforcement officers to the residence of the defendant. The police officers, receiving no response at the residence, entered the house and made a search to determine if any persons were present. Finding no one, the officers proceeded toward the garage. A strong odor was detected by the officers outside the garage, which became stronger as the officers approached the garage. Inside, a large box was found containing various articles and several green plastic trash bags. A child's body in an advanced state of decomposition, was found inside one of the bags. The body was later identified as Sally Battles. Upon discovering the body, the officers left the residence and proceeded to defendant's place of employment in order to arrest him. Once defendant was placed in

---

12. It is provided by 22 O.S.1971, § 1066, in pertinent part:

"The Appellate Court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court."

See *Breshers v. State*, Okl.Cr., 572 P.2d 561 (1978).

custody, the officers returned to his residence to complete the investigation. Most of the victim's clothes, as well as other items of evidence, were found during the subsequent search of the garage and the house.

The issue of the applicability of 21 O.S. Supp.1973, § 701.1 ¶ 9, to homicides committed by persons not parents nor acting in loco parentis has heretofore been decided by this Court. See *Jones v. State*, Okl.Cr., 542 P.2d 1316 (1975), and *Wishon v. State*, Okl. Cr., 550 P.2d 575 (1976). I stand in total agreement with the majority view in those cases, and find no compelling reason to depart from the rationale stated in those cases. I believe that to now adopt a restrictive and limited interpretation of 21 O.S. Supp.1978, § 843, would distort the basic purpose of this statute as it has been applied in cases of child abuse wherein death has not resulted. In, *Edmondson v. State*, Okl.Cr., 527 P.2d 190 (1974), the defendant, not related to the child or mother, was convicted of violating Section 843. The defendant testified that he beat the child only to arouse the anger of his mother. It is clear from the facts that the defendant had no authority to discipline the child. It would be absurd to use a more restrictive view of this statute when dealing with homicide than when dealing with child abuse not resulting in death. If the purpose of the statute is to protect children from brutality, this purpose would not be best served by limiting its application to cases in which death does not occur, because death is the ultimate brutality. The particular source of the injury to the child is immaterial to this objective. As was stated in the *Jones* case:

"We are of the opinion that the interpretation now urged upon us would unduly restrict the operation of the language, 'or

other person,' as contained in [Section 843]. If the Legislature had intended to so restrict that statute, we are persuaded that express terms of limitation would have been employed, and that the statute expressly extends to parents in emphasis of its applicability to those who exceed the use of lawful force upon a child. A statute must be held to mean what it plainly expresses and no room is left for construction and interpretation where the language employed is clear and unambiguous." This holding was cited with approval in *Wishon*, supra.

It is argued that Section 843 must be read in conjunction with Section 844, and that doing so, the limitation of Section 843 is apparent. However, Section 843 has not been interpreted in light of Section 844 in cases of child abuse not resulting in death. See *Edmondson v. State*, supra.

It is also argued that ¶ 9 of 21 O.S.Supp. 1973, § 701.1, absorbs ¶ 2 in the majority decision in *Wishon*. However, a careful reading of ¶¶ 2 and 9 [1] reveals that while ¶ 2 is aimed at punishing one for committing a sexual assault which results in the death of a child, ¶ 9 is aimed at punishing someone for committing another type of assault resulting in the death of a child. It is not uncommon for the Legislature to treat sexual crime separate from other types of assault.

I next turn to the issue of the search of the garage and house subsequent to the discovery of the body of Sally Battles. I specifically dissent to that portion of the majority opinion. The defendant argues that the items seized from the garage and house subsequent to the finding of the body was invalid as a blanket search. The majority agrees with defendant, and states that the warrant was exhausted upon find-

---

1. 21 O.S.Supp.1973, § 701.1 ¶¶ 2 and 9.

Homicide, when perpetrated without authority of law and with a premeditated design to effect the death of the person killed, or of any other human being is murder in the first degree in the following cases:
" * * *

"2. When perpetrated by one committing or attempting to commit rape, kidnapping for

the purpose of extortion, arson in the first degree, armed robbery or when death occurs following the sexual molestation of a child under the age of sixteen (16) years;
" * * *

"9. When perpetrated against a child while in violation of Section 843, Title 21 of the Oklahoma Statutes; and
" * * *"

ing the body. This finding is questionable at best.[2]

Assuming arguendo that the warrant did not cover other relevant items of evidence, I believe the search can be justified without a warrant. The majority relies on the case of *Blackburn v. State*, Okl.Cr., 575 P.2d 638 (1978), in order to find no exigent circumstances in this case. However, I believe the holding in *Blackburn* was based upon an incorrect interpretation of prior case law, particularly *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A search warrant in *Coolidge* was found to be invalid by a five-member majority of the United States Supreme Court, because the warrant was not issued by a neutral and detached magistrate. Dicta in that opinion, supported by only four members of the court, was interpreted by the majority of this Court as purporting to limit the plain view exception to the securing of a search warrant to situations in which exigent circumstances existed independent of the plain view. However, I believe this is not the prevailing precedent nor the law in Oklahoma. The most recent controlling statement by the United States Supreme Court concerning the doctrine of plain view is found in *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), wherein the majority stated:

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

This has long been the law in Oklahoma. See *Reynolds v. State*, 575 P.2d 628 (1978); *Singleton v. State*, Okl.Cr., 568 P.2d 284 (1977); *State v. Baxter*, Okl.Cr., 528 P.2d

347 (1974). Based upon the correct application of the plain view exception, any evidence which was in plain view during the search for the body was admissible. The temporary interruption of the investigation to arrest the defendant, and its completion after the arrest of the defendant, did not render inadmissible such evidence.

The conviction for Murder in the First Degree under § 9 should be affirmed, but modified to life imprisonment in accordance with *Riggs v. Branch*, Okl.Cr., 554 P.2d 823 (1976).

---

2. "WHEREFORE, Affiant asks that a search warrant issue according to law, directed to any sheriff, policeman or law enforcement officer in Noble County, Oklahoma, commanding that he search the said person and premises, and take possession of the body of said child *and all estimates of items that may possibly* have been used by said Carlous G. Phelps in his assault upon said child and in the detention of said child." [Emphasis Added].

"YOU ARE THEREFORE COMMANDED at any time of the day or night to make search of said person and premises, the curtilage thereof and the appurtenant thereunto belonging for the described property, and if found to seize the same and safely *keep them, and bring them* before me at the Noble County Courthouse in accordance with the subsequent order of the Court, and make return hereof within ten days." [Emphasis Added].

Although the search warrant contains some ambiguity on its face, read together with the affidavit for search warrant it is clear that the warrant was intended to include more than just the body of the child.