Charley Buford BIRDSONG, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-80-851.

Court of Criminal Appeals of Oklahoma.

Aug. 6, 1982.

Earl R. Donaldson, Asst. Public Defender, Oklahoma County, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Dena L. Bates, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Charley Buford Birdsong, appellant, was convicted in the District Court of Oklahoma County for the crime of Incest. He was sentenced to seven (7) years imprisonment, with two (2) years suspended.

The appellant is the father of the seventeen-year-old victim in this case. The victim testified that her entire family had returned home late in the evening on February 16, 1980. Appellant then sent the other children to bed in one room and ordered the victim and her mother into the remaining bedroom. Appellant had been drinking, and he commanded the mother and daughter to undress and lay down on the bed. After getting undressed himself, the daughter claims appellant got into bed with her and her mother. The mother later left the room after having an argument with appellant, and during her absence the father had sexual intercourse with his daughter. The victim further testified that such sexual abuse had occurred since she was thirteen years old.

The daughter reported this incident to Alfred Nichols, the assistant principal of her high school, and Mr. Nichols promptly notified the authorities.

Don Landis, a detective from the Sex Crimes Unit of the Oklahoma City Police Department, testified that the victim originally gave conflicting accounts of the incident. Detective Landis said she first claimed to have fabricated the entire episode. However the daughter later told him the incident did in fact occur, and she was then ready to press charges.

For several months prior to this incident the relationship between the victim and her parents had been deteriorating, when finally the appellant took his daughter's car away from her and made her quit a job. These disciplinary measures were not well received by the daughter, and the defense theorizes that a charge of Incest was a means by which she could retaliate against the father.

Other children of appellant testified they heard the victim cry that night, but they overheard her claim that she had been frightened by a dream. The mother also testified, confirmed that her daughter had been upset by a bad dream, and strongly denied that appellant had ever had sexual relations with his daughter.

In his sole assignment of error, the appellant contends the admission into evidence of State's Exhibit No. 1, a police report, constitutes prejudicial error warranting a reversal of this conviction, because the State failed to delete from this report references to a polygraph examination taken by the victim. The relevant portion of State's Exhibit No. 1 is as follows:

"Polygraph was administered by Sgt. Devine and after the test both MISS BOAT-MAN and myself was [sic] advised by Sgt. Devine that the polygraph showed that Sheila was telling the truth and that she had been having sexual relationships

with her father with her mother's knowledge. It also showed that this had been occurring since her 13th birthday;"

The report containing this information was only one page in length, and the polygraph results were clearly visible.

Prior to October of 1975, this Court permitted trial judges to admit the results of a polygraph examination, if all parties in the cause stipulate to the admission of such evidence. However, in *Fulton v. State*, 541 P.2d 871 (Okl.Cr.1975), this Court overruled those prior decisions, including *Castleberry v. State*, 522 P.2d 257 (Okl.Cr.1974) and *Jones v. State*, 527 P.2d 169 (Okl.Cr.1974), and established the following new rule:

"... in all future cases the introduction into evidence of polygraph examination results for any purpose, even if admitted upon stipulation of all parties, will be error."

Under this new guideline, it was error to admit State's Exhibit No. 1 into evidence.

The appellant offered no objection to the admissibility of this evidence, and he failed to request that any prejudicial or incompetent matter be deleted from the report. According to the State, appellant has waived any possible error. However, this Court, in *Fulton v. State*, supra, effectively foreclosed such an argument by expressly holding that polygraph results are always inadmissible, regardless of the actions taken by counsel.

Furthermore, we cannot find that the introduction of this information into evidence was harmless error. As the State contends, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. *Phelps v. State*, 598 P.2d 254 (Okl.Cr.1979). In the instant case such a possibility does exist. The State's case primarily rested upon the testimony of the victim. She had given conflicting statements to the police before finally deciding to press charges, and consequently there may have been serious doubt in the minds of the jury concerning her credibility. Even a cursory examination of the police report would have informed a doubtful juror that the victim had passed a polygraph examination.

The State also asserts that testimony given by Dr. George Patterson and Charles Sapp, when combined with that given by the victim, established appellant's guilt, independent of the evidence in question here. The record reveals, however, that Dr. Patterson, the State's rebuttal witness, had never examined any parties involved in this case. He testified only to general behavior of incest victims in reporting the offense. In addition, the State mistakenly argues that Charles Sapp testified he had seen pictures depicting the victim and her father lying nude on a bed together. The State fails to disclose that this testimony was never heard by the jury, but was suppressed by the trial court after conducting an in camera hearing.

When the State's case is contrasted with that of the defense, it is readily apparent that appellant's guilt was in serious dispute. There is no method available for this Court to ascertain to what extent the jurors relied upon this information in their deliberations. It could have been the decisive factor.

In light of the foregoing, the judgment and sentence is hereby REVERSED.

BRETT, P. J., and BUSSEY, J., concur.