**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LARRY GENE GOBLE,

      Petitioner - Appellant,

v.

JAMES L. SAFFLE, individually and in
his capacity as Director of the Department
of Corrections,

      Respondent - Appellee.

No. 03-6116
(D.C. No. CIV-00-1918-L)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HENRY, HOLLOWAY** and **LUCERO**, Circuit Judges.

**I**

    Petitioner-appellant Larry Gene Goble, an inmate in an Oklahoma penitentiary,
initiated this habeas corpus proceeding under 28 U.S.C. § 2254. Goble is serving two
consecutive terms of life imprisonment without parole after his conviction on two counts
of murder. The district court denied the petition and later granted a certificate of
appealability on one issue: whether trial and appellate counsel were ineffective in
presenting Goble's Fourth Amendment challenge to the search warrant which led to the

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

discovery of the bodies of the victims near Goble's rural residence. This court expanded the certificate of appealability to include the issue of whether "trial and appellate counsel were ineffective in presenting Mr. Goble's challenge to the property description in the search warrant under Article 2, § 30 of the Oklahoma Constitution and 22 Okla. Stat. § 1223." We affirm the judgment of the district court, although on grounds different from those on which that court relied.

## II

*Overview of the trial evidence*

The murder victims were Bonnie Kinsey and her live-in friend, David Johnson. Kinsey owned a house in Cleveland County, Oklahoma, which she wanted to sell. Kinsey and Johnson were both drug users, and the evidence suggests that obtaining money for drugs was at least one motive for Kinsey to sell her house. In any event, she was willing to sell the house at a price that appeared to be well below market value.

Appellant Larry Goble used and sold drugs and was acquainted with Kinsey and Johnson. Goble arranged for his mother to purchase Kinsey's house. Kinsey wanted the purchase price paid in cash, and the sale closed on March 15, 1995. The price was about $30,000, of which Mrs. Goble paid $28,000 in hundred dollar bills at closing, having earlier made a modest down payment. Apparently she thought that this was the total consideration and was unaware that appellant Larry Goble had agreed to give Kinsey an ounce of methamphetamine as additional consideration for the deal. A witness testified that Kinsey and Johnson went to Goble's home to pick up the drug after the closing.

They were never seen again.

The next morning after the sale, a man who had spent the night in Kinsey's house observed appellant Goble enter the house without knocking. Goble seemed surprised and nervous when he encountered the man. Also on the day after the sale, appellant Goble and his neighbor rented a bulldozer, ostensibly to cover a dump site on Goble's property and do other projects on both tracts. When the neighbor, Eugene Compton, heard the machine running early the next morning (the second day after the sale had closed) and came to see what was going on, Goble told him that he wouldn't be needed for awhile. Kinsey was reported missing in late March 1995, but Johnson was not reported missing until mid-October of that year.

Appellant Goble and his neighbor, Compton, had some other dealings. They had a plan to go into business renting ultra-light airplanes and had purchased a machine or two. They had a disagreement concerning this venture in September 1995, and shortly after that Mr. Compton contacted the Norman police to report his suspicion that Goble had murdered Kinsey and Johnson and buried the bodies on his land. This led, after further investigation, to the issuance of the search warrant which is the primary focus of this appeal. This warrant authorized search of an open field near appellant Goble's residence for the victims' bodies and other evidence. Execution of the warrant resulted in the discovery of the bodies, which were buried about four feet deep on Goble's property. Each had died of gunshot wounds.

Goble was charged and surrendered to authorities a few days later. Some six

months after that, with the assistance of Goble and his attorney, one of Goble's relatives produced a pistol which the attorney turned in to the authorities. The relative said that he had bought the gun from Goble in April 1995. Ballistic tests showed that the pistol was the murder weapon. Additional evidence introduced at trial by the prosecution included evidence that appellant Goble had spent money freely just after the victims' disappearance, and much of it was in hundred dollar bills.

Appellant was represented at trial by two court appointed attorneys. One of the two, Ms. Debbie Maddox, was employed by the Oklahoma Indigent Defense System in the capital trial division. Her co-counsel was an experienced trial lawyer who was in private practice and also accepted court appointments. The defense strategy at trial was to create doubt by showing that the neighbor, Compton, had access to Goble's house because he was doing some remodeling work for Goble, and so could have had access to the gun, as well as the bulldozer. There was also evidence that Compton knew something about the sale of Kinsey's house and so may have had the same robbery motive that the prosecution attributed to Goble.

Goble was convicted of the two murders. The state unsuccessfully argued for the death penalty at the second stage of the trial. The jury recommended life without parole, and the trial judge sentenced accordingly.

### III

*Summary of post-trial proceedings*

On appeal, Goble was represented by a different attorney, privately retained.

Goble insisted that his appellate attorney be willing to raise the issue of ineffective assistance of trial counsel.[1] Appellate counsel did raise ineffective assistance in the direct appeal, but the Oklahoma Court of Criminal Appeals affirmed.

Goble filed a pro se application for post-conviction relief in state court in which he again raised the issue of ineffective assistance of trial counsel and also raised the issue of ineffective assistance of appellate counsel. Relief was denied. An appeal was taken to the Oklahoma Court of Criminal Appeals, which affirmed the denial. Goble, assisted by counsel, then initiated the instant proceedings in the federal district court.

The federal district court assigned the case to a magistrate judge for a report and recommendation under authority of 28 U.S.C. § 636(b)(1). The magistrate judge's first report and recommendation, which was approved in due course by the district judge,

---

[1]In subsequent proceedings, both when represented by counsel and when appearing pro se, appellant has alleged numerous deficiencies in the preparation and performance of his trial counsel. The magistrate judge rejected many of the contentions in this section 2254 proceeding because appellant had failed to support them with any evidence. Nevertheless, several contentions survived and were addressed in the evidentiary hearing held over several days by the district judge.

We are not concerned with any but the search warrant issues on which the certificate of appealability has been granted. We do wish, however, to make a few observations about the quality of representation in general. Our review of the trial transcript shows that the two trial attorneys vigorously defended the case. Appellant himself, testifying in the federal district court, praised the performance of the attorneys at the preliminary hearing. One of the two trial attorneys for the state also testified in the federal district court. He praised the performance of defense counsel at trial. It was his opinion that the trial strategy of showing that Compton could have committed the murders, combined with the attorneys' efforts to focus on the limitations in the state's evidence, created a shadow of doubt which, while not sufficient to win an acquittal, was serious enough that he believed after the first stage evidence that the state would be unsuccessful in its attempt at the second stage to persuade the jury to impose the death penalty. As noted, the jury did not do so.

concluded that the respondent's motion to dismiss for failure to exhaust state court remedies should be denied and that a response to the petition should be ordered. Subsequently, the magistrate judge issued a comprehensive Supplemental Report and Recommendation addressing the petition on the merits and recommending that it be denied in its entirety. Appellant then filed his objections to the report and recommendation of the magistrate judge. The district court examined the voluminous record thoroughly and found that an evidentiary hearing was needed on Mr. Goble's claim of ineffective assistance of appellate counsel and on four particular claims of ineffective assistance of trial counsel. The evidentiary hearing included three days of testimony. We need not dwell on most of the issues addressed by the district court (much less the multitude of claims winnowed out by the magistrate judge) because they are beyond the scope of this appeal. For our purposes, it is sufficient to note that the district court held that any errors in the description of the property in the search warrant were not enough to establish that appellant Goble's Fourth Amendment rights had been violated. The judge reasoned that the Sixth Amendment claims consequently should be rejected, having been premised on the alleged Fourth Amendment violation.[2]

**IV**

*Previous Adjudications of Issues Concerning the Search Warrant*

---

[2]The district judge did not address appellant Goble's contention that the search warrant was invalid under Oklahoma law and that counsel had been ineffective in presenting that argument. As noted *supra*, this court granted an expanded certificate of appealability to allow Goble to pursue this issue.

We note first that there were two search warrants executed on appellant's rural residence. The first, with which we are concerned in this appeal, authorized a search for the bodies of the victims on appellant's but did not include the residence. The second was issued soon after discovery of the bodies and authorized a search of the residence itself. We are not concerned with the second warrant per se, although documents showing the mailing address of the residence which were discovered in the second search do have some bearing on the challenge to the first warrant. Hereinafter, references to "the search warrant" are to the first of the two search warrants.

The first search warrant describes the place to be searched as:

an open field located at or near 14475 Pecan Circle Court, City of Noble, Cleveland County, State of Oklahoma; said residence is a single family dwelling, a light blue wooden frame house with dark blue trim and a tan composite roof; the front door of said residence faces east; said residence can be reached by traveling south on Pecan Circle Court from Cemetery road; Pecan Circle Court curves to the west; 14475 is located at the dead end of Pecan Circle Court; the residence is located approximately 100 feet from the road, and is accessed by a dirt and gravel road leading from a brown metal gate . . . .

Contrary to the warrant's description, the property was located east of the community of Slaughterville, southeast of Noble and outside Noble's city limits by several miles, although apparently the mailing address was through Noble.

The second alleged error in the description is that the address given, 14475 Pecan Circle Court, is incorrect because, appellant contends, no such street exists. Apparently the correct address may have been 14475 Pecan *Hills Circle*. Our record includes a map of the vicinity, purportedly verified by the Association of Central Oklahoma

Governments, showing streets or roads named "Pecan Hills Ct," "Pecan Hills Rd," and "Pecan Hills Cir," but no "Pecan Circle Court" as the address is given in the search warrant. One of appellant's primary complaints about the performance of his trial and appellate attorneys is that they failed to place in the record any evidence, such as the map just described, to show the actual names of the roads in the vicinity and the absence of a road with the search warrant's designation of "Pecan Circle Court." The referenced map was not submitted until a motion for rehearing in the direct appeal to the Oklahoma Court of Criminal Appeals.

Appellant's trial counsel twice presented motions in state court to suppress the evidence obtained through the search warrant. In addition to challenging the accuracy and sufficiency of the description of the property to be searched, with which we are concerned in this appeal, trial counsel also contended that the affidavit was insufficient to establish probable cause for the search. These contentions were first presented at the preliminary hearing and were urged again just before the start of trial. At the preliminary hearing, the appellant's attorneys argued that the warrant was invalid because the property was not in the town of Noble. (Prelim. Hearing Tran. Vol. II at 522-23; Motion to Suppress at 2.) And the prosecutor responded by arguing specifically (and first) that any problem with the address of the property was cured by the inclusion of directions that would enable anyone to find the place (a contention which continues to be disputed).

The faulty description issue was raised again at a pretrial conference just three days before the trial began. (Tran. of 9/3/1996 at 104-113.) At that time, one of

-8-

appellant's trial lawyers stated that it was impossible to find the property from the directions given in the warrant:

> And if you follow the directions of the search warrant you end up in the middle of nothing. You don't end up at Larry Goble's property. It is an inaccurate description of how to get there. You go out to 120th and Cemetery Road and get lost is what the search warrant does for you. You're still two or more miles from his property. It fails in that respect. I would say that if the state disagrees we take the time to all drive out and follow that road and see where it goes – this is an important issue here – and see if we can find it according to the description.
>
> Of course, if you take the address that they gave, this property is actually in Slaughterville some eight to ten miles from Noble city limits. And I don't know that there's a Pecan Circle Court in Noble or not, but it doesn't really matter because Mr. Goble's house is not in Noble.

*Id*. at 104-06. The attorney went on to discuss Oklahoma cases (also discussed *infra*) holding that the search warrant must describe the place to be searched with sufficient particularity that an officer not familiar with the location could find the place relying solely on the warrant. The trial court again denied the motion to suppress, ruling from the bench without discussion.

The issue was raised again on direct appeal to the Oklahoma Court of Criminal Appeals. Appellate counsel made two points relevant to the issues now before this court: that the property was not, as the warrant said, in the City of Noble, and that the officer who prepared the affidavit and warrant, Detective Joanne Sellars, had admitted at the preliminary hearing that the property could not be found by one solely relying on the

description contained in the warrant.[3]  In a petition for rehearing, which was denied, appellate counsel appended a map of the area (referenced *supra*), which showed streets or roads named "Pecan Hills Court," "Pecan Hills Rd," and "Pecan Hills Cir," but not the designation appearing in the warrant, "Pecan Circle Court."  The Oklahoma Court of Criminal Appeals denied rehearing.

Appellant later sought post-conviction relief through the state courts, acting pro se. Relief was denied by the state district court.  On appeal the Oklahoma Court of Criminal Appeals affirmed.  On the question of ineffective assistance of counsel, that court said: "Petitioner offers allegations of investigations that could have been conducted and issues which could have been raised, but offers no evidence or anything which creates a material issue of fact, which established the outcome of his trial and appeal would have been different, or which show that he is factually innocent."  Ex. 4 to Petitioner's Appendix (from the federal district court) at 2-3.

## V

### *A.  Standard of review and framing of issues*

This court has jurisdiction over this appeal under 28 U.S.C. §§ 1291 & 2253. Because the petition in this matter was filed after the effective date of the Anti-Terrorism

---

[3]As we read the testimony, Detective Sellars admitted only that the property was not within the city limits of Noble and so could not be found by a person who confined the attempt to areas within the city limits.  In a second statement cited by appellant's attorney on direct appeal in state court, Detective Sellars said only that the location could not be found by the address alone and that fact was the reason that she had included directions and a physical description of the house in the warrant.

and Effective Death Penalty Act of 1996 (AEDPA), its provisions apply to this appeal. The issue of whether appellate counsel was constitutionally ineffective was adjudicated on the merits in state court. Ordinarily this would require us to apply the very high standards of AEDPA, under which appellant must show that the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In fact, however, a *de novo* standard must be applied here. A review of the nature and development of the issue will both demonstrate why AEDPA deference is not applicable here and provide context for our analysis and disposition.

Appellant's contention at bottom is that his Fourth Amendment rights and his rights under the Oklahoma Constitution were violated by the execution of the search warrant because the warrant did not describe with particularity the place to be searched. We are not, however, empowered to address this contention directly. Although in general our habeas jurisdiction reaches – and is limited to – violations of the United States Constitution, we may not overturn a state criminal conviction because of a violation of the Fourth Amendment if the petitioner had a full and fair opportunity to litigate this claim. *Stone v. Powell*, 428 U.S. 465 (1976). Goble does not contend that he did not have such an opportunity.

Because of these restrictions, Goble frames the issue concerning the search warrant

indirectly through a claim of violation of his Sixth Amendment right to effective assistance of counsel.[4] But this leads to further complication. Goble's appellate counsel on his direct appeal raised some issues of alleged ineffective assistance of trial counsel and separately raised the issue of the accuracy of the search warrant's description of the property. But appellate counsel did not raise the precise issue which Goble now presents: whether trial counsel was ineffective because the lawyers failed to support the Fourth Amendment argument (and the argument based on the state constitution) with sufficient evidence to demonstrate the warrant's alleged errors and inaccuracy. Therefore, that issue could be subject to procedural bar.[5] To maneuver past that obstacle, Goble contends that appellate counsel was ineffective in failing to raise this alleged ineffectiveness of trial counsel.

Goble raised this claim of ineffective assistance of appellate counsel, along with many other claims, in his pro se post-conviction action in state district court and, assisted by counsel, on appeal from that court's denial of post-conviction relief to the Oklahoma Court of Criminal Appeals. We have quoted *supra* the rejection of that argument by the

---

[4]*See United States v. Owens*, 882 F.2d 1493, 1498 & n.5 (10th Cir. 1989) (noting that the limitations imposed by *Stone v. Powell* on federal habeas review of Fourth Amendment claims do not preclude claims of ineffective assistance in presentation of those claims, citing *Kimmelman v. Morrison*, 477 U.S. 365, 379, 382-83 (1986)).

[5]*See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Application of the procedural bar rule to claims of ineffective assistance of counsel in cases from Oklahoma is not, however, always appropriate. *See English v. Cody*, 146 F.3d 1257 (10th Cir. 1998). We need not belabor the point here as we can take the case in the posture in which it is presented to us.

state appellate court. We ordinarily would review that decision under AEDPA's extremely deferential standards even though the state court did not explain its reasoning. *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999). But these standards do not apply, we have held, where the habeas petitioner has been denied an opportunity to develop the record to support his contentions.

We have held that where a state prisoner has unsuccessfully but "diligently sought to 'develop the factual basis of [his] claim in State court proceedings,' [28 U.S.C.] § 2254(e)(2) does not bar an evidentiary hearing." *Bryan v. Mullin*, 335 F.3d 1207, 1215 (10th Cir. 2003). In this case, as we have noted, the federal district court granted an evidentiary hearing. The State does not allege error in the procedure followed below. The record does show that appellant sought an evidentiary hearing in state district court in his post-conviction proceedings but did not have that opportunity. In these circumstances, we conclude that we must accept the federal district judge's grant of an evidentiary hearing as an unchallenged holding that appellant was entitled to one. And in reviewing the conclusions there reached, AEDPA deference is not required because we are not reviewing state court findings, and are instead reviewing those of the federal district court.

Accordingly, on appeal we review the federal district court's findings of fact only for clear error, and we review "*de novo* whether counsel's performance was legally deficient and whether the deficiencies prejudiced the defendant." *Bryan*, 335 F.3d at 1216. As noted, however, the district court did not rule on appellant's arguments based

on state law.  Because Appellant Goble  contends that Oklahoma law offers greater protection by demanding greater specificity in a search warrant's description of the place to be searched, we briefly review *infra* relevant decisions of the Oklahoma Court of Criminal Appeals.

Appellant Goble contends vigorously that appellate counsel was ineffective for failure to timely move to supplement the record in the direct appeal with official maps to show conclusively that there is no Pecan Circle Court in the vicinity.  Appellate counsel testified in the evidentiary hearing in the federal district court that his experience had been that the Oklahoma Court of Criminal Appeals was not receptive to attempts to supplement the record on direct appeal and that he believed that maps or other supplementary materials were unnecessary in view of the admission by Detective Sellars that the warrant's description was insufficient to enable one unfamiliar with the area to find appellant's property.

The federal district court rejected the claim of ineffective assistance of appellate counsel, concluding that there had been no underlying Fourth Amendment violation, without which the Sixth Amendment claim was untenable.  As noted, we have expanded the inquiry by granting a certificate of appealability on the question whether counsel was ineffective in failing to have the evidence suppressed on the basis that the description in the search warrant was inadequate under Oklahoma law (which appellant argues is stricter than the Fourth Amendment requires on this point).  We have often approached similar issues in this manner:  "When a defendant alleges his appellate counsel rendered

ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue." *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). As we shall explain, however, we find that resolution of the underlying questions of the validity of the warrant under state and federal law is less clear than resolution of the Sixth Amendment issue itself.

*B. State law on the warrant issue is unclear.*

Our review of the pertinent Oklahoma cases leaves us in doubt as to whether the Oklahoma Court of Criminal Appeals would have ruled in appellant's favor had the record been developed as he maintains should have been done. As already noted, appellant relies heavily on the principle that the search warrant must "so particularly describe the place to be searched that the officer can find the place without the aid of any other information save that contained in the warrant." *McCormick v. State*, 388 P.2d 873, 875 (Okla. Crim. App. 1964). The *McCormick* court cited several prior cases in adhering to this principle.

That principle was also followed in *Anderson v. State*, 657 P.2d 659, 661 (Okla. Crim. App. 1983). The court in that case acknowledged that the officer who prepared the warrant knew what property he was attempting to describe, but held that this knowledge was insufficient because the property description should enable any officer to find the property, including an officer with no prior knowledge. *Accord Harvey v. State*, 676 P.2d 865 (Okla. Crim. App. 1984).

This line of Oklahoma cases clearly supports appellant's argument. But there is a

conflicting series of Oklahoma cases which we must also consider. For example, in *Ward v. State*, 293 P.2d 618 (Okla. Crim. App. 1956), the search warrant had correctly described the property except that it had given the town as Dawson, when in fact the property was in an area that formerly had been in Dawson but had been annexed by Tulsa. In the course of upholding the warrant in that case the state court said that the property could be located by reference to maps and plats in the county assessor's office and that there was no chance that any other property would have been mistaken for the subject property. Moreover, the court said that in addition to consulting sources like maps and plats, the officer serving the search warrant "may rely on his own personal knowledge . . . where the property searched was that described in the warrant, and the property could actually be located from the description contained in the search warrant." 293 P.2d at 621.

In *Nottingham v. State*, 505 P.2d 1345 (Okla. Crim. App. 1973), the problem with the warrant was that the town name had simply been omitted. In upholding the warrant in that case, the court found it significant that the officer who obtained the warrant had personal knowledge of the location; the same officer assisted in serving the warrant; and there was no evidence that any property in Oklahoma County (to whose officers the warrant was directed) outside of Oklahoma City bore the address of 1705 N.W. 40th, the address given in the warrant.

The Oklahoma cases thus are less than clear on whether, and in what circumstances, the knowledge of the officer preparing or serving the warrant can be

-16-

considered in determining whether the property is adequately described in the warrant.

Other cases have gone further in excusing errors in the search warrant. In *Woodard v. State*, 567 P.2d 512 (Okla. Crim. App. 1977), the warrant gave the address of the property to be searched as "1008-10" on a certain street in Sulphur. The evidence was that there were houses both at 1008 and at 1010. Moreover, there was testimony that contraband was found in the former, which apparently had been the intended target, and the latter "may have also been searched." In spite of this evidence that the error may have actually led to a search of a residence that should not have been searched, the opinion simply said that it was clear that "the officers had no difficulty finding the location in that they had it under surveillance . . . ." 567 P.2d at 515.

The state court followed and relied on *Woodard* in deciding *Whitchurch v. State*, 572 P.2d 266 (Okla. Crim. App. 1977), in which the location of a cabin in a rural area was erroneously described in the warrant, which apparently was off by at least two miles. The court said that, as in *Woodard*, the officer's knowledge saved the day: "Trooper Teehee investigated the accident and disturbance at the . . . cabin prior to obtaining the warrant, and thus had no need to rely on the description of the location contained in the warrant." 572 P.2d at 269. Calling the error "merely clerical," the court offered no further analysis to support its conclusion that there was no reversible error. The circumstances and result were very similar in *Anderson v. State*, 658 P.2d 501 (Okla. Crim. App. 1983). We are not aware of any case in which the Oklahoma court has attempted to harmonize these two lines of cases. Consequently, it is difficult to say that

-17-

there is a reasonable probability that optimal presentation of the evidence supporting the attack on the search warrant would have led to a different result.

Because it not entirely clear how the Oklahoma courts would have ruled on the issue had it been timely presented with all the supporting evidence now cited by appellant, we move to a direct consideration of appellant's primary contentions – that trial counsel's failure to support the motion to suppress with more evidence, and the failure of appellate counsel on direct appeal to present *that* contention, were deficiencies of sufficient magnitude to constitute violations of his right to effective assistance of counsel.

### C. Counsel was not constitutionally ineffective.

Appellant's burden under *Strickland v. Washington*, 466 U.S. 668 (1984), is heavy. He must first show that his attorney's representation was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687. We review the performance of counsel deferentially, indulging a "strong presumption" that counsel's conduct was "within the wide range of reasonable professional assistance." *Id.* at 689. Second, the defendant must show that the deficient performance "prejudiced the defense." *Id.* at 687.

As shown *supra* appellate counsel made the argument that the search warrant failed to describe the place to be searched with particularity; he supported that argument by citing the preliminary hearing testimony of the officer who drafted the search warrant in which she admitted that the warrant erroneously stated that the property was in the town of Noble and further admitted (at least arguably) that a person unfamiliar with the

location could not have found the place by relying solely on the warrant itself; and the attorney provided case authority for the contention that the shortcomings of the property description were grounds for reversing the conviction. Whether or not the attorney could have performed better, we could not say that this presentation of the issue amounted to a failure to function as counsel, the *Strickland* standard. We are mindful that "[w]hen a true adversarial criminal trial has been conducted – even if defense counsel may have made demonstrable errors – the kind of testing envisioned by the Sixth Amendment has occurred." *United States v. Cronic*, 466 U.S. 648, 656 (1984).

For the same reasons, we conclude that trial counsel was not constitutionally ineffective. Although trial counsel could have introduced into evidence the map on which appellant now relies, failure to present the best possible argument is not, at least in most cases, the same as constitutionally deficient representation. Trial counsel provided legal[6] and factual support for the challenge to the search warrant, which appellate counsel reasonably judged to be an adequate basis for the issue. Because appellant Goble asserts that Oklahoma law is more favorable to his position than federal law under the Fourth Amendment, our conclusion that counsel performed adequately in presenting the issue in reliance on state law also disposes of the issue to the extent that it is based on federal law.

The rejection of the argument by the state courts at each stage may indicate that the argument would have been rejected even with the additional evidentiary material that

[6]Trial counsel cited cases on which counsel representing Mr. Goble have relied ever since, the line of Oklahoma cases discussed *supra*, including *McCormick v. State*, and *Anderson v. State*.

appellant contends should have been provided. As our discussion *supra* shows, the Oklahoma Court of Criminal Appeals has repeatedly upheld search warrants in similar circumstances, notwithstanding the conflicting line of cases in which that court has applied a more stringent rule. But we do not base our holding on the second prong of *Strickland* concerning prejudice. We are convinced that appellant was provided adequate assistance of counsel.

The judgment of the district court is AFFIRMED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge