Kenneth Wayne PAXTON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–89–1199.

Court of Criminal Appeals of Oklahoma.

Dec. 30, 1993.

Rehearing Denied Feb. 10, 1994.

Frank Miskovsky (at trial), Oklahoma City, Benjamin McCullar, Asst. Appellate Indigent Defender (on appeal), Norman, for appellant.

Robert Macy, Dist. Atty., Barry Albert, Asst. Dist. Atty., Susan Brimer Loving, Atty. Gen. of Oklahoma, A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for State.

## OPINION

LUMPKIN, Presiding Judge:

Appellant Kenneth Wayne Paxton was tried by jury and convicted of Murder in the First Degree (21 O.S.1981, § 701.7) (Count I); Shooting with Intent to Kill (21 O.S.1981, § 652) (Count II); Discharging a Firearm with Intent to Kill (21 O.S.1981, § 652) (Count III); and Possession of a Loaded Firearm, After Former Conviction of a Felony (21 O.S.1981, § 1283) (Count IV), Case No. CRF–89–765, in the District Court of Oklahoma County. The jury found the existence of three (3) aggravating circumstances and recommended punishment of death for the murder conviction and life imprisonment for Count II; twenty (20) years imprisonment in Count III; and ten (10) years imprisonment on Count IV. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.

Appellant was found guilty of killing Donna Kay Neal, discharging a firearm with the intent to kill her sister, Linda Neal, and shooting with the intent to kill Edward Peters. The facts surrounding these crimes will be discussed below.

### FIRST STAGE TRIAL ISSUES

In his first assignment of error, Appellant challenges the sufficiency of the evidence to support the convictions for malice aforethought murder and shooting with intent to kill. In support of his argument, he relies on his testimony at trial and post-trial affidavits challenging the credibility of Linda Neal and Edward Peters.

The test for reviewing the sufficiency of the evidence is well known: whether, after

reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Spuehler v. State,* 709 P.2d 202, 203–04 (Okl. Cr.1985). This Court has held repeatedly that the jury is the exclusive judge of the weight of the evidence and the credibility of the witnesses testimony. *Hollan v. State,* 676 P.2d 861, 864 (Okl.Cr.1984); *Isom v. State,* 646 P.2d 1288, 1292 (Okl.Cr.1982). Although there may be conflict in the testimony, if there is competent evidence to support the jury's finding, this Court will not disturb the verdict on appeal. *Enoch v. State,* 495 P.2d 411, 412 (Okl.Cr.1972).

■ In conducting our appellate review, affidavits filed after trial and not heard by the jury will not be considered. We will not allow a defendant a second attempt to test the credibility of the witnesses. *Pierce v. State,* 786 P.2d 1255, 1264 (Okl.Cr.1990). The affidavits supplied in this case, police reports containing statements made by Linda Neal immediately after the shooting and allegedly inconsistent with her trial testimony and the opinion of a clinical psychologist as to the effects of cocaine upon an individual's perception and memory, contained information which was brought out in the cross-examination of the State's witnesses. To the extent this evidence was considered by the jury, it will be considered in our review.

■ Here, the evidence showed that the decedent, Linda Neal and Edward Peters had been at Peters' home smoking cocaine during the early morning hours of February 5, 1989. The decedent had left the house to borrow money from Appellant for more cocaine. Appellant, armed with a .357 snub-nosed revolver, followed the decedent to Peters' home. Appellant had previously made hostile remarks to Peters about the decedent, and warned the decedent to stay away from Peters and from using cocaine. After returning to Peters' home with the money obtained from Appellant, the decedent acted nervous and repeatedly looked out the window. She saw Appellant's car drive up the street and thought that Appellant was coming after her. Appellant drove around the block at least once before parking his car down the street and walking to Peters' front door. The decedent was unarmed as she answered the door and admitted the Appellant into the house. Appellant stepped inside the house, struck the decedent in the face and fatally shot her in the head.

■ "Malice" has been defined as the "deliberate intention unlawfully to take away the life of a human being". 21 O.S.1981, § 701.-7(A). Sufficient premeditation to murder can be formed in a mere instant. *Carter v. State,* 698 P.2d 22, 24 (Okl.Cr.1985). Here, the State sufficiently proved that Appellant had the deliberate intention to unlawfully take the life of Donna Kay Neal.

■ The evidence also clearly showed that Appellant had the intent to kill while shooting at Edward Peters. After shooting the decedent, Appellant turned the gun on Peters. Firing twice at Peters, Appellant chased him from the kitchen to the bathroom. There, Appellant forced open the door, pointed the gun at Peters' head and fired once, striking Peters in the neck. While Appellant offered a theory of self defense, the jury chose to believe the evidence as set forth by the State. It is not the province of this Court to second guess the trier of fact. *Yell v. State,* 694 P.2d 946 (Okl.Cr.1985); *McDonald v. State,* 674 P.2d 1154 (Okl.Cr.1984). Accordingly, this assignment of error is denied.

■ In his second and third assignments of error, Appellant challenges the jury instructions. He argues that the trial court erred in refusing to give his requested instruction on second degree depraved mind murder and in giving an inaccurate instruction on flight. The determination of which instructions shall be given to the jury is a matter within the discretion of the trial court. Absent an abuse of that discretion, this Court will not interfere with the trial court's judgment, if the instructions as a whole accurately state the applicable law. *Pham v. State,*

752 P.2d 830, 832 (Okl.Cr.1988); *Pollard v. State,* 528 P.2d 1121 (Okl.Cr.1974).

 In a murder prosecution, the trial court is to instruct on every degree of homicide which the evidence tends to prove. *Tarter v. State,* 359 P.2d 596, 601 (Okl.Cr.1961). *See also Camron v. State,* 829 P.2d 47, 56 (Okl.Cr.1992). Murder in the second degree occurs "[w]hen perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect death". 21 O.S.1981, § 701.-8(1). We have held that this statute is applicable where there is no premeditated intent to kill any particular person. *Boyd v. State,* 839 P.2d 1363, 1367 (Okl.Cr.1992). Appellant argues that given his longstanding jealousy of the decedent's relationship with Peters, a reasonable juror could have found that his acts were imminently dangerous and evinced a depraved mind but were committed without the design to effect death. We disagree. Here, the evidence showed that the Appellant acted with the specific intent to effect the death of the decedent. Therefore, the evidence does not support the giving of a jury instruction on second degree depraved mind murder.

The evidence also did not warrant giving an instruction on flight, according to Appellant's next allegation. He argues that his actions were not consistent with departing the scene with a guilty conscience. In the alternative, he argues that if a jury instruction was warranted, the one given was improper.

 Evidence of a defendant's flight has long been held admissible as tending to show consciousness of guilt. *Wills v. State,* 636 P.2d 372, 375 (Okl.Cr.1981). Actions by a defendant, such as flight to avoid arrest and attempts to destroy evidence, are admissible as tending to establish the guilt of the accused. *Id.* at 376. In the present case, Appellant initially left the scene of the murder but returned to place a knife in the victim's hand; departing the scene of the homicide, he was observed by police driving at an excessive rate of speed; and after some furtive moves and two requests by the police, Appellant eventually exited the vehicle. We find this sufficient evidence upon which to give a jury instruction on flight. *See Boltz v. State,* 806 P.2d 1117, 1124 (Okl.Cr.1991). The instruction given in the present case, Instruction No. 31, is virtually identical to number 806 of the Oklahoma Uniform Jury Instructions–Criminal (OUJI–CR) [1]. However, the following provision, contained in the OUJI–CR 806 is not contained in the instant instruction:

> The defendant has offered evidence explaining his acts. You must consider the claim of the defendant in determining if flight occurred.

 Appellant directs our attention to a notation in OUJI–CR 806 that this provision must be given where a defendant has introduced evidence explaining his acts. See *Wilson v. State,* 96 Okl.Cr. 137, 250 P.2d 72, 76 (1952). See also *McDonald v. State,* 764 P.2d 202, 204 (Okl.Cr.1988).

 In the present case, Appellant testified that he returned to the scene of the

---

1. Instruction No. 31 provided as follows:
 Evidence has been introduced of the defendant's departure shortly after the alleged crime was committed. You must first determine whether this action by the defendant constituted flight.
 The term "flight" as it is used in this instruction, means more than departure or concealment. To be in flight, a defendant must have departed with a consciousness of guilt in order to avoid arrest.
 To find that the defendant was in flight you must find beyond a reasonable doubt that:
 FIRST— The defendant departed or concealed himself;

SECOND— With a consciousness of guilt;
THIRD— In order to avoid arrest for the crime with which he is charged.
If, after a consideration of all the evidence on this issue, you find beyond a reasonable doubt that the defendant was in flight, then this flight is a circumstance which you may consider with all the other evidence in the case in determining the question of the defendant's guilt or innocence. However, if you have a reasonable doubt that defendant was in flight, then the fact of any departure or concealment is not a circumstance for you to consider. (O.R. 264).

murder to see if the police had arrived and that he was driving to the police station when apprehended. The failure to instruct the jury that it must consider this testimony in determining if flight occurred is error. However, it does not warrant a reversal of the conviction. Appellant did not object to the instruction as given nor offer a suggested instruction to the court. Therefore, our review is for fundamental error only. *Battles v. State,* 732 P.2d 480, 482 (Okl.Cr.1987). This review reveals that the error did not determine the verdict as the jury was thoroughly instructed as to the weight to be given the Appellant's testimony. Further, Instruction No. 31 informed the jury that it must determine whether Appellant's conduct in leaving the scene constituted flight, and that in doing so it must consider all the evidence presented at trial. Accordingly, we find no fundamental error.

 In his fourth and fifth assignments of error, Appellant alleges that the State withheld certain exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To establish a *Brady* violation a defendant must establish that the prosecution suppressed evidence that was favorable to him or exculpatory and that the evidence was material. *United States v. Conner,* 752 F.2d 504, 506 (10th Cir.1985); *Gates v. State,* 754 P.2d 882, 886 (Okl.Cr.1988). In *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985), the Supreme Court established a single test for materiality in those cases where the defense makes a specific request, a general request or no request for *Brady* material:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

Here, Appellant made a general discovery request for all information which would "negate the guilt of the accused". A crime report filed by the Oklahoma City Police Department concerning an altercation between the decedent and another woman approximately ten (10) months before the decedent's murder was not included. Appellant argues on appeal that the crime report was material to his defense of self-defense as it showed that the decedent was not only capable of violence, but did in fact commit an act of violence as an aggressor.

 The record reveals the State gave Appellant a complete copy of its file on the case. The State argues that the file did not contain the police report because it did know of its existence. Under the general discovery request in this case, the State had no duty to investigate the character and history of the victim in the absence of any indication that such an inquiry was necessary. Regardless of any good faith on the part of the State, a *Brady* violation can still be found under appropriate circumstances. However, a prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial. *United States v. Agurs,* 427 U.S. 97, 112–113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342, 355 (1976). The omission must be evaluated in the context of the entire record. *Id.* In this case, the defense did not make a request for a records check on the decedent or give notice to the State of the relevance of that type of information to the Appellant's case. Evaluating the omission of the crime report in context of the entire record, we find that Appellant's guilt was established beyond a reasonable doubt and that the omitted evidence does not create a reasonable probability that, if it had been disclosed to the defense, the result of the trial would have been different.

Evidence that the decedent may have had a violent nature was introduced at trial through Appellant's own testimony that in the altercation in which the decedent was killed, she was the aggressor, kicking Appellant and attacking him with a knife. When this is considered together with evidence pre-

sented by the State that Appellant was the aggressor, that he was substantially larger in size than the decedent, that after shooting at and pursuing Linda Neal and Edward Peters, Appellant returned to the scene of the murder to place a knife in the decedent's left hand, we remain convinced of Appellant's guilt. Further, as the omission of the evidence of the crime report did not prevent Appellant from presenting his defense of self-defense, we find that he was not denied a fair trial.

■ Appellant also asserts that the discovery order was violated by the State's failure to disclose the statements and reports of a paramedic who attended to the decedent at the scene of the murder. The record reflects that the report in question was a "patient care" form used by the witness to refresh his memory prior to testifying. The trial court found no *Brady* violation but provided defense counsel with a copy of the report pursuant to 12 O.S.1981, § 2612[2] and granted a recess during which the report could be reviewed.

We agree with the trial court's finding. The paramedic testified, using the report to refresh his memory, that he arrived at the scene of the murder to find a knife in the decedent's left hand. This testimony was merely cumulative to that of the police officers at the scene. Therefore, the State's failure to provide the defense with the paramedic's report before trial did not create a reasonable probability that the outcome of the trial would have been different if the report had been disclosed. See *Van White v. State*, 752 P.2d 814, 819 (Okl.Cr.1988).

Further, we find that Appellant cannot now complain that he was prejudiced in any way by the court's ruling as he was ultimately given a copy of the report and time to review it prior to continuing with his cross-examination of the witness. This is true especially in light of the fact Appellant did not specifically request discovery of this type of evidence and the State is not required to

be clairvoyant regarding Appellant's theory of defense.

■ In his sixth allegation of error, Appellant contends the trial court erred in failing to grant his motion for a continuance to rebut testimony of State's witness Elenor Roby. Ms. Roby, the decedent's sister, testified in rebuttal that the decedent had a reputation in the community as a peaceful law abiding person and that she had never seen her sister commit an act of violence. The granting or denying of a motion for continuance is within the discretion of the trial court. *Pankratz v. State*, 663 P.2d 26 (Okl. Cr.1983). Here, we find no abuse of that discretion. Ms. Roby's testimony was properly admitted to disprove Appellant's claim that the decedent could have been the aggressor. See *DeVooght v. State*, 722 P.2d 705 (Okl.Cr.1986). This is evidence which could have reasonably been anticipated in a case of self-defense. Further, as Ms. Roby's testimony was the only evidence presented by the State concerning the decedent's peaceful nature, we find that Appellant was not prejudiced by the denial of extra time to attempt to rebut such evidence. *Williamson v. State*, 532 P.2d 444, 450 (Okl.Cr.1975).

### SENTENCING STAGE ISSUES

During the second stage of trial, the State sought to prove three (3) aggravating circumstances; 1) that the defendant was previously convicted of a felony involving the use or threat of violence to the person; 2) that the defendant knowingly created a great risk of death to more than one person; and 3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. To prove the third aggravator, the State introduced evidence of the 1979 murder of Appellant's wife, Gloria Paxton. Appellant was charged with committing the murder but the charges were ultimately dismissed at the request of the State.

Evidence of the murder was introduced at trial through the hearsay testimony of Pam

**2.** Title 21 O.S. § 2612, provides that a court shall allow an adverse party to have any writing relied

upon by a witness to refresh his memory before testifying or while testifying.

Paxton, Appellant's daughter and witness to the murder. The trial court found the statement admissible under the excited utterance exception to the hearsay rule. See 12 O.S. 1981, § 2803(2). Appellant argued at trial, and now on appeal, that the statement was impermissible hearsay which should not be admitted into evidence. Specifically, he asserts that the State failed to prove the existence of an "excited utterance"; that the case authority upon which the trial court relied had been overruled two (2) months prior; and that the trial court erred in finding Pam Paxton unavailable as a witness under 12 O.S.1981, § 2804(A)(3).

A well recognized exception to the hearsay rule, the "excited utterance", is a statement "relating to a startling event or condition *made while the declarant was under the stress of excitement caused by the event."* 12 O.S.1981, § 2803(2). (emphasis added). The critical question under this exception is whether the statement by the declarant was spoken under the extreme stress of a startling event so that there was not time to fabricate. *Johnson v. State,* 665 P.2d 815, 820 (Okl.Cr.1982).

Evidence introduced by the State showed that the then three (3) year old Pam Paxton followed Appellant as he took a shotgun from the back seat of his car into the house, up the stairs and shot his wife as she lay in bed. Police, paramedics and family members of both the victim and the Appellant soon appeared on the scene. Pam was taken to the home of Appellant's sister for a short time until she was picked up by the victim's sister, Lavern Dunn Smith. Mrs. Smith testified that Pam was upset and crying uncontrollably. Attempting to calm her down, Mrs. Smith asked Pam why she was crying so and why she was so upset. Pam told her that "my daddy shot my mama". Mrs. Smith stated that since the child was so upset, she did not question her further.

We have no trouble finding that the shooting of her mother by her father was a startling event to Pam Paxton, and that her statement to Mrs. Smith certainly related to that startling event. The only question is whether the statement was made while Pam was under the stress of excitement caused by the startling event. The statement was made in the late afternoon, several hours after the morning shooting. During that interim time period, Pam was in the company of several adults concerned about the shooting, although no one could remember anything about Pam's conduct until she was picked up by Mrs. Smith. Despite the lapse in time, we find that Pam Paxton's uncontrollable crying supports a finding that Pam was still upset that afternoon. Further, in light of the absence of any evidence of statements made by Pam prior to her comment to Mrs. Smith and the fact that Pam was not questioned about the shooting until two (2) days after the excited utterance, we find her statement spontaneously volunteered. The spontaneity of this statement and the absence of evidence indicating any incentive for her to falsely report what she saw give rise to its trustworthiness. The fact that she may have been around adults who may or may not have been talking about the shooting goes to the weight and credibility of the statement, not its admissibility. Therefore, we find the statement was properly admitted as an excited utterance.

In admitting the statement into evidence, the trial court relied in part on *Newbury v. State,* 695 P.2d 531 (Okl.Cr.1985). However, *Newbury* had been overruled two (2) months prior to the court's decision. This does not invalidate the trial court's ruling since *Newbury* was overruled on factual grounds only. This Court held that a statement made the morning after a startling event occurring the previous evening did not satisfy the requirement of a statement made while under the stress of the startling event. The legal grounds upon which the case was based were not affected and remain good law. *See McCalip v. State,* 778 P.2d 488 (Okl.Cr.1989). Further, the facts in the instant case are quite different from *Newbury* and *McCalip* as the court was not faced with a statement made after the declarant had slept.

■ The trial court initially ruled Pam Paxton was unavailable to testify, based upon her lack of memory of the shooting of her mother. Contrary to Appellant's arguments, we find the propriety of this ruling is not an issue now as the availability of the witness is immaterial under the "excited utterance" exception. 12 O.S.1981, § 2803.

In his eighth assignment of error, Appellant contends that evidence of the unadjudicated murder of Gloria Paxton should not have been introduced during the second stage of trial. He relies upon *Johnson v. Mississippi,* 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), and *Bromley v. State,* 757 P.2d 382 (Okl.Cr.1988), to argue that the introduction of evidence of the unadjudicated murder calls upon him to "defend a stale charge which he was not given an opportunity to defend 10 years ago". (Appellant's brief, pg. 50).

■ In *Johnson v. Mississippi,* the United States Supreme Court held that a death sentence based in part on a vacated prior conviction could not stand. At trial, the State had introduced the defendant's prior conviction for assault with intent to commit rape as the sole evidence supporting the aggravating circumstance of "prior violent felony conviction". However, the prior conviction had been reversed some fifteen (15) years earlier. The Supreme Court stated that as a result of the reversal, the prior conviction was no longer relevant to the sentencing decision. Therefore, the death sentence could not be upheld, even under a reweighing of the evidence, as the jury had been allowed to consider evidence which was materially inaccurate.

In *Bromley,* a murder charge, which had been dismissed ten (10) years previously for lack of speedy trial, was admitted during the sentencing stage of trial. This Court found the admission of such evidence to be a violation of the defendant's constitutional right to a speedy trial. This Court found that since the defect in the prior conviction was the denial of the right to a speedy trial, the defendant in effect suffered anew from the deprivation of that constitutional right. Further, admission of the evidence was held to violate 21 O.S.1981, § 701.10, which prohibits admission of evidence secured in violation of the federal or state constitutions.

Neither a vacated conviction nor the denial of a constitutional right is at issue in the present case. The prior homicide charge against Appellant was dismissed for lack of evidence. Therefore, it falls into the category of unadjudicated crimes. While this Court has repeatedly upheld the admission of evidence of unadjudicated crimes in the sentencing stage of a capital case, see *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987) *cert. denied* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987), the frequent challenges to this evidence cause us to revisit the issue.

Generally, evidence of other crimes is not admissible in a criminal trial unless it meets the exceptions set forth in 12 O.S.1981, § 2404(B). *Burks v. State,* 594 P.2d 771, 772 (Okl.Cr.1979), *overruled in part on other grounds, Jones v. State,* 772 P.2d 922 (Okl. Cr.1989). However, an exception exists in the sentencing stage of a capital case. Title 21 O.S.1981, § 701.10, provides that in a capital sentencing proceeding evidence may be presented as to any mitigating circumstances or as to any of the aggravating circumstances enumerated in Section 701.12 of title 21. The Supreme Court has held that "[a] jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed but also why it should not be imposed." *Jurek v. Texas,* 428 U.S. 262, 271, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929, 938 (1976). In *Jurek,* the Supreme Court upheld an aggravating circumstance which asked the jury to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." The Court stated:

> In determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and

severity of his prior criminal conduct. It could further look to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another. . . .

428 U.S. at 272–273, 96 S.Ct. at 2956–2957, 49 L.Ed.2d at 939.

In *Johnson,* this Court relied on *Jurek* but also found persuasive language from the Model Penal Code. Section 210.6 of the Model Penal Code provides in part:

In the proceeding, [sentencing] evidence may be presented as to any matter that the Court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition and any of the aggravating or mitigating circumstances enumerated in . . . this Section. Any such evidence, not legally privileged, which the Court deems to have probative force, may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant's counsel is accorded a fair opportunity to rebut such evidence. The prosecuting attorney and the defendant or his attorney shall be permitted to present argument for or against sentence of death.

In *Johnson,* we held that it was not necessary for there to be a final conviction for an unrelated criminal offense to be admissible in the sentencing stage. "Prior criminal activity is relevant to the jury determination on the aggravating circumstance [whether] the defendant would constitute a continuing threat to society. It is 'essential that the jury have before it all possible relevant information about the individual defendant whose fate it must determine.'" 665 P.2d at 823, quoting *Jurek v. Texas,* 428 U.S. at 276, 96 S.Ct. at 2958, 49 L.Ed.2d at 941.

Today we reaffirm our position that unadjudicated offenses may be introduced during the second stage of a capital trial to support the aggravating circumstance of continuing threat. Prediction of future criminal conduct, although difficult, is an essential element in many of the decisions made in the criminal justice system. *Jurek,* 428 U.S. at 275, 96 S.Ct. at 2957, 49 L.Ed.2d at 940. Evidence of a defendant's criminal history is relevant to the jury's determination as to whether the defendant is likely to commit future acts of violence that would constitute a continuing threat to society. Having such evidence for consideration focuses the jury's sentencing determination on the particularized circumstances of the offense and the individual offender.

■ That this evidence of prior bad acts might be prejudicial to the defendant is no reason to exclude it from the jury's consideration. It is the nature of the criminal trial that the State presents evidence prejudicial to the defendant. Under our state death penalty scheme, the defendant is afforded due process rights of notice and opportunity to be heard, in that he receives notice not only of the aggravating circumstance alleged against him, but also of the evidence to be used to support those aggravators. The defendant then has the opportunity to prepare to meet and rebut this evidence at trial.

The admission of unadjudicated offenses during the sentencing stage of a capital trial is distinguishable from the admission of evidence in the sentencing stage of a non-capital case where the State seeks to enhance punishment for habitual offenders. The Legislature has promulgated procedures whereby one found guilty of a non-capital felony offense may be more severely punished because of his previous convictions. See 21 O.S.1981, § 51. Enhancement of punishment is limited to cases where the State has proven that the defendant has previous final convictions. Prior bad acts not resulting in criminal convictions may not be presented to or considered by the jury when the State seeks to enhance punishment pursuant to this statute.

■ By contrast, in the second stage of a capital case, the jury is to determine whether

the death penalty is the appropriate punishment. This determination is to be based upon all the facts and circumstances, particular to the case and the individual defendant. While the jury was not specifically instructed that unadjudicated crimes can be used to support the aggravator of continuing threat, they were instructed on the three aggravators alleged and that in arriving at a decision on punishment they must first determine if one or more of the aggravators alleged was proven beyond a reasonable doubt by the evidence introduced at trial. If at least one of the alleged aggravators alleged was found to exist beyond a reasonable doubt, the jury was instructed that it may then consider imposing the death penalty. Neither the Legislature nor this Court has required the jury list the evidence it considers as supporting a particular aggravating circumstance or that which it considers mitigating of punishment. Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). *See also Walker v. State,* 723 P.2d 273, 284 (Okl.Cr.1986) *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986); *Brogie v. State,* 695 P.2d 538, 544 (Okl.Cr.1985). It is sufficient that the jury is instructed to weigh the mitigating and aggravating evidence, and only when the aggravating circumstances clearly outweigh the mitigating may the death penalty be imposed.

■ By enacting 21 O.S.1981, § 701.10 *et seq.,* our Legislature has provided a principled method for distinguishing the cases in which the death penalty is warranted and those cases in which it is not. *See Gregg v. Georgia,* 428 U.S. 153, 198, 96 S.Ct. 2909,

2937, 49 L.Ed.2d 859, 888 (1976); *Furman v. Georgia,* 408 U.S. 238, 313, 92 S.Ct. 2726, 2764, 33 L.Ed.2d 346 (1972). Permitting consideration by the jury of unadjudicated offenses in a case where the aggravating circumstance of continuing threat is alleged provides further guidance for the jury in their determination whether the defendant's character and criminal propensities justify imposition of the death penalty.

■ The order from the district court dismissing the prior murder charge against Appellant stated the charge was dismissed "to best meet the ends of justice ... Defendant cleared by polygraph test." After the trial court's denial of Appellant's request to inform the jury of the polygraph test, the parties stipulated and the jury was informed the prior charge had been dismissed at the request of the State. In his ninth assignment of error Appellant argues that the trial court erred in excluding any reference to the polygraph test. We find no error in the court's ruling as it is well settled that the results of a polygraph test are not admissible for any purpose. *Birdsong v. State,* 649 P.2d 786, 788 (Okl.Cr.1982); *Fulton v. State,* 541 P.2d 871 (Okl.Cr.1975); *Henderson v. State,* 94 Okl.Cr. 45, 230 P.2d 495, 502 (1951).[3]

■ Appellant directs our attention to *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), wherein the Supreme Court held that a *per se* rule excluding all hypnotically refreshed testimony infringed upon a defendant's right to testify in her own behalf. Appellant argues that this Court's *per se* exclusion of polygraph results adversely affected his ability to present relevant mitigating evidence. We disagree with Appellant's conclusions and find *Rock* distin-

---

**3.** In its most recent term of court, the Supreme Court ruled in *Daubert v. Merrell Dow Pharmaceuticals,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), that the standard set forth in *Frye v. U.S.,* 54 App.D.C. 46, 47, 293 F. 1013 (1923), that expert opinion based on scientific technique is inadmissible unless the technique is generally accepted as reliable in the relevant scientific community has been superseded by the adoption of the Federal Rules of Evidence. *Henderson,* the first case in which this Court

addressed the admissibility of "lie detector" tests, relied in part on *Frye.* However, the Court also relied on its own findings and those from sister courts as to the lack of reliability of such tests. While the reliability of "lie detector" tests may or may not have improved since *Henderson* was decided in 1951, we cannot find the trial court erred in excluding the polygraph results as it was not presented with any evidence to overcome the presumption of unreliability.

guishable from the present case. In *Rock*, the defendant could not remember the details of the shooting until she was hypnotized. The trial court granted the state's motion to exclude the hypnotically refreshed testimony and limited the defendant's testimony to matters remembered prior to being placed under hypnosis. At trial, her testimony consisted of little more than a general description of the events surrounding the shooting.

In the present case, Appellant sought to introduce a copy of the order dismissing the prior charge. The court's ruling prohibiting the admission of this evidence did not prevent Appellant from presenting other evidence concerning the dismissal of the prior charge, such as the testimony of the polygraph examiner or any of the attorneys involved in the dismissal. Appellant had the opportunity to present substantive evidence to rebut the State's evidence of the prior murder charge, but chose not to do so. Further, as the jury was clearly informed that the prior murder charge had been dismissed, we find the trial court did not err in excluding any reference to the polygraph.

■ In his tenth assignment of error, Appellant alleges that the trial court failed to abide by the guidelines of *Brewer v. State*, 650 P.2d 54 (Okl.Cr.1982), for the procedures to be used in proving that the defendant was previously convicted of a felony involving the use or threat of violence to the person. In *Brewer*, this Court held that in all capital cases wherein the State has alleged the existence of the aggravating circumstance that the defendant was previously convicted of a felony involving the use or threat of violence to the person, the defendant must be given notice of all the evidence to be presented by the State; the judge must review the evidence in camera to ensure the felonies did indeed involve the use or threat of violence and upon a finding by the trial court that the prior conviction did involve the use or threat of violence, the defendant must be given the opportunity to personally stipulate that the prior felony conviction alleged did involve the use or threat of violence to the person. Con-

ducting the in camera hearing and determining the defendant's willingness to stipulate are procedures which must be done sua sponte by the court. Under *Brewer* the defendant is not required to take any affirmative steps to exercise his right to prevent the underlying facts of the prior conviction from coming into evidence.

■ Evidence presented in the instant case to support the aggravator of "prior violent felony conviction" consisted in part of a 1964 manslaughter conviction. The State introduced the judgment and sentence as well as the testimony of two (2) people present at the homicide. Appellant was not given the opportunity to stipulate to the underlying facts of the prior manslaughter conviction. This facial violation of *Brewer* was not error in this case as the evidence of the underlying facts of that manslaughter conviction were also presented to support the aggravating circumstance of "continuing threat". (See Bill of Particulars, O.R. 78). In addressing a similar situation in *Smith v. State*, 819 P.2d 270, 277 (Okl.Cr.1991), this Court held that a defendant could not stipulate to any prior convictions alleged to support the aggravator of "continuing threat" and thereby limit the amount of evidence the State could introduce. We stated in part:

> Preventing the jury from hearing evidence relevant to a determination of the continuing threat circumstance would render meaningless the need to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing the sentence of death.'" *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1765, 64 L.Ed.2d 398 (1980) (footnotes omitted). Without relevant evidence to consider, any attempt to channel the sentencer's discretion would be futile. As long as the evidence is relevant to finding or refuting the continuing threat circumstance, it should be admitted.

Further, using evidence of the prior manslaughter conviction to support two (2) ag-

gravators did not prejudice the sentencing hearing. This Court has upheld the use of the same act or course of conduct to support more than one aggravating circumstance where the evidence shows different aspects of the defendant's character or crime. *Pickens v. State,* 850 P.2d 328 (Okl.Cr.1993); *Smith v. State,* 819 P.2d 270, 278 (Okl.Cr. 1991); *Berget v. State,* 824 P.2d 364, 376 (Okl.Cr.1991); *Green v. State,* 713 P.2d 1032 (Okl.Cr.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986). Here, the aggravating circumstance of prior violent felony conviction is supported by the judgment and sentence for manslaughter. This evidence is indicative of Appellant's violent criminal history. When punishment is determined for Appellant's present conduct, the consideration of his past acts, together with his current conduct, shows that the death penalty is the only appropriate sentence. On the other hand, the underlying facts of the manslaughter conviction support the aggravator of "continuing threat" by showing Appellant's propensity for violence and future dangerousness and the need to protect society from his probable future conduct.

 Appellant contends in his eleventh assignment of error that the trial court erred in admitting into evidence a photograph of the body of Gloria Paxton at the time of her murder. Appellant argues that the photo had no probative value as there was no dispute concerning the cause of death. For photographs to be admissible, their content must be relevant and their probative value must substantially outweigh their prejudicial effect. *Smith v. State,* 737 P.2d 1206, 1210 (Okl.Cr.1987), *cert denied,* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1988); *Oxendine v. State,* 335 P.2d 940, 942 (Okl.Cr.1958). The corpus delicti had been proven in the guilt stage of trial and the photo had slight relevance to issues presented in the sentencing phase of the trial. The prejudicial effect of showing the jury a photo

of the deceased Gloria Paxton far outweighed any relevance the photo may have had in proving the aggravating circumstance of continuing threat. However, such error is harmless as the photo was merely cumulative to the testimony of the investigating officer and the medical examiner.

 Appellant further challenges the constitutionality of two of the aggravating circumstances, "continuing threat" and "great risk of death to more than one person". The "continuing threat" aggravating circumstance has been analyzed and upheld by this Court as specific, not vague, and readily understandable. *Boyd v. State,* 839 P.2d 1363 (Okl.Cr.1992). The constitutionality of the aggravating circumstance of "great risk of death" was recently reaffirmed by this Court in *Trice v. State,* 853 P.2d 203, 219 (Okl.Cr.1993). We are not now persuaded to change our position on either aggravator.

 In his fifteenth assignment of error, Appellant asserts that several second stage instructions precluded the jury from properly considering mitigating evidence and thereby prevented meaningful review of the death sentence imposed. Initially, Appellant objects to the giving of Instruction No. 6.[4] He asserts that instructing the jury in the permissive language that mitigating circumstances are those which "may be considered" as extenuating or reducing the degree of blame instead of using the mandatory language of "must be considered" allowed the jury to disregard mitigating evidence.

This same argument was addressed and rejected by this Court in *Pickens v. State,* 850 P.2d 328 (Okl.Cr.1993). In *Pickens,* an instruction identical to No. 6 was given. We stated it would have been an inaccurate statement of the law to instruct the jury that it "must" consider the mitigating evidence presented to reduce the blame as that would take away from the jury its duty to make an

4. Instruction No. 6 read in part:
 Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case. (O.R. 278)

individualized determination of the appropriate punishment. Contrary to Appellant's argument, the instruction did not prejudice the defense by limiting the consideration of mitigating evidence. The instruction clearly informed the jury as to the definition of mitigating evidence, that what evidence fit that definition was for their determination, and that they need not limit their consideration to the six (6) specifically listed mitigating factors. It provided the fullest possible latitude for the jury's consideration of any evidence in mitigation. We find that the instruction fully informed the jury as to the appropriate weight and consideration to be given the mitigating evidence and that the jury was not prohibited in any way from considering any and all relevant mitigating evidence. *See Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). See also *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

■ Appellant also argues that Instruction No. 7[5] authorized imposition of the death penalty although mitigation may have outweighed aggravation. This argument was rejected by this Court in *Johnson v. State,* 731 P.2d at 1003 wherein we stated:

> The idea that the jury may decline to impose the death penalty even if aggravating circumstances are not outweighed by mitigating circumstances is subsumed within an instruction that if the jury finds one or more aggravating circumstances they may consider imposing the death penalty, i.e. that they could, but did not have to, impose the death penalty. (emphasis in original)

■ Instruction No. 8 draws the next objection as Appellant finds error in its direction to the jury that "the law does not require you to reduce to writing the mitigating circumstances you find, if any." (O.R. 280). He argues that requiring the jury to reduce to writing the aggravating circum-

stances found, but not the mitigating, prevents meaningful appellate review. Even though Oklahoma is a reweighing state, the jury is not statutorily required to memorialize in writing the mitigating circumstances found. 21 O.S.1981, § 701.11. That this function is not required of the jury does not prevent effective appellate review. Under 21 O.S.1981, § 701.13, this Court has the responsibility to review the entire record to determine whether the death penalty was imposed under the influence of passion, prejudice, or any other arbitrary factor. The absence of a list of mitigating evidence found by the jury has in no way hampered this review.

■ Further, Appellant lodges an objection to Instruction No. 12, claiming it precluded the jury from considering any mitigating evidence in the first stage. He specifically objects to the following language:

> In arriving at your determination as to what sentence is appropriate under the law, you are authorized to consider only the evidence received in open court presented by the state and the defendant during the sentencing phase of this proceeding. (O.R. 284).

This same argument was considered and rejected by this Court in *Boyd v. State,* 839 P.2d at 1372–1373. As in *Boyd,* the State specifically moved to incorporate all of the first stage evidence into the second stage of trial. The transcript is replete with references by both the State and the defense that the first stage evidence was to be considered together with the evidence introduced in second stage in determining punishment. We find nothing in the instruction limiting the jury's consideration of the evidence. Accordingly, Appellant's argument must fail. We have thoroughly reviewed all of the instructions given during the second stage of trial and find the jury was adequately instructed as to the applicable law and no modification of the death sentence is warranted.

---

5. Instruction No. 7 read as follows:
 If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unani-
 mously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed. (O.R. 279)

In his sixteenth assignment of error Appellant alleges that the instructions concerning the manner in which the jury was to weigh the aggravating and mitigating circumstances set forth an improper burden of proof. He asserts that the jury was informed that they "could impose the death penalty if they merely found beyond a preponderance of the evidence, that the aggravating circumstances outweighed the mitigating evidence." This same allegation of error was addressed and rejected by this Court in *Trice v. State*, 853 P.2d 203 (Okl.Cr.1993); *Williamson v. State*, 812 P.2d 384 (Okl.Cr. 1991), *cert. denied* — U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992); *Romano v. State*, 847 P.2d 368, 392 (Okl.Cr.1993). In *Romano,* we stated:

> In *Johnson v. State*, 731 P.2d 993 (Okl.Cr. 1987) we held that the burden of proof analysis not strictly applicable to the weighing process. Quoting to *Daniels v. State*, 453 N.E.2d 160 (Ind.1983), we stated that while the State must prove beyond a reasonable doubt the existence of at least one of the enumerated aggravating circumstances, the determination of the weight to be accorded the aggravating and mitigating circumstances is not a fact which must be proved beyond a reasonable doubt. Instead it is a balancing process. (cite omitted).

847 P.2d at 392.

Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). *See also Walker v. State*, 723 P.2d at 284; *Brogie v. State*, 695 P.2d at 544. The instructions given to the jury in the present case properly advised them to weigh the aggravating circumstances against the mitigating evidence, that a finding of the aggravating circumstances beyond a reasonable doubt is not by itself enough to assess the death penalty but that the aggravating circumstances must clearly outweigh the mitigating, or death may not be imposed.

### *INEFFECTIVE ASSISTANCE OF COUNSEL*

In his twelfth assignment of error, Appellant contends that he received ineffective assistance of counsel during both stages of trial. It is well established that an accused has a fundamental right to the reasonably effective assistance of counsel, regardless of whether counsel is appointed or retained. U.S. Const. amend. VI, XIV; Okla. Const. art. II, § 20. The standard for evaluating whether an accused received effective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court provided a two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This same test applies to a capital case as well as a non-capital case. *Liles v. State*, 702 P.2d 1025, 1034 (Okl.Cr.1985).

In hearing a claim of ineffectiveness of counsel, the reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 694–696, 104 S.Ct. at 2070, 80 L.Ed.2d at 699. The burden rests with the Appellant to show that there is a reasonable probability that, but for any unprofessional errors by counsel, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700. This Court has stated the issue is whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance. *Fisher v. State*, 736 P.2d 1003, 1011 (Okl.Cr.1987); *Cotton v. State*, 679 P.2d 1305, 1308 (Okl.Cr. 1984).

Appellant initially argues that he was denied effective assistance of counsel by counsel's failure to adequately investigate the case prior to trial. Appellant asserts that he had informed counsel of the decedent's altercation at the laundromat (listed in the police crime report) and that counsel's failure to investigate the evidence so prejudiced his defense as to make the result of the trial unreliable.

The fact that a defense attorney could have done more investigation before presenting a case to the jury does not alone establish ineffective assistance of counsel. *See Williamson v. State,* 812 P.2d 384 (Okl. Cr.1991). To quote the Eleventh Circuit Court of Appeals:

Given the finite resources of time and money that face a defense attorney, it simply is not realistic to expect counsel to investigate substantially all plausible lines of defense. A reasonably competent attorney often must rely on his own experience and judgment, without the benefit of a substantial investigation, when deciding whether or not to forego a particular line of defense without substantial investigation so long as the decision was reasonable under the circumstances.

*Gates v. Zant,* 863 F.2d 1492, 1498 (11th Cir.1989). Further, in *Boltz v. State,* 806 P.2d at 1126, we found an attorney's decision not to interview certain witnesses and to rely on other sources of information, if made in the exercise of professional judgment, is not ineffective counsel.

In the present case, Appellant has not shown he suffered any prejudice by counsel's conduct. Appellant was still able to adequately present a defense of self-defense. In light of the other evidence presented at trial, Appellant has failed to show how the result of the trial would have been different if the evidence of the victim's prior altercation had been introduced at trial.

Appellant next directs our attention to a litany of alleged omissions occurring during the first stage of trial, including counsel's failure to object to the flight instruction, the failure to object to more of the prosecution's closing argument, and that counsel should have affirmatively pointed out that cocaine abusers may exhibit violent behavior. As previously stated in this opinion, the failure to instruct the jury that it must consider Appellant's explanation for his leaving the scene in determining if flight occurred was error. Counsel's failure to object to this omission was likewise error. However, Appellant has failed to show he was prejudiced by counsel's omission or that the result of the trial would have been different if counsel had entered an objection to the instruction. The decision concerning which instructions to give to a jury is within the trial court's discretion, not that of defense counsel. Here, the instructions as a whole properly informed the jury as to the weight and consideration to be given the Appellant's testimony and that guilt was to be determined based upon all of the evidence presented at trial.

Appellant also claims trial counsel was ineffective for failing to present rebuttal evidence that cocaine users often exhibit aggressive behavior while under the influence of the drug. In assessing an Appellant's claim of ineffective assistance of counsel, the reviewing court must judge the reasonableness of counsel's conduct on the facts of the case at hand and *evaluate the conduct from counsel's perspective at the time.* (emphasis added). *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Every effort must be made to eliminate the distorting effects of hindsight.

Here, the jury was fully informed as to the use of cocaine by the parties and their resulting conduct. Counsel thoroughly cross-examined both Linda Neil and Edward Peters concerning the decedent's use of cocaine and her ensuing conduct during the hours preceding her murder. He also inquired as to their use of cocaine at that time and any influence it may have had upon their perceptions at the time and their subsequent

memory of the event. The decision not to introduce expert testimony as to violent behavior by cocaine users is not indicative of ineffective assistance. The three (3) witnesses to the decedent's conduct thoroughly described her actions to the jury. Appellant has neither shown that the decedent had been observed by any of the experts now proffered nor has he shown that the expert studies upon which he relies would apply to the decedent. The introduction of such expert testimony in rebuttal would be extrinsic to the issue at trial. We do not find counsel's conduct to be outside the wide range of professionally competent assistance.

■ Further, the decision when and if to object to comments in the prosecution's closing argument is a matter of trial strategy. *Fisher v. State,* 736 P.2d 1003, 1013 (Okl.Cr. 1987). Trial counsel's failure to object to remarks made by the prosecution in both the first and second stages of trial which were clearly not erroneous and which did not affect the verdict, did not constitute ineffective assistance of counsel. *See Johnson v. State,* 727 P.2d 965 (Okl.Cr.1986).

Appellant contends that during the second stage of trial, counsel was ineffective for failing to recognize that the case relied upon by the court for its ruling on Pam Paxton's excited utterance had been overruled and for failing to object to the court's failure to follow the mandates of *Brewer v. State.* Counsel's failure to object to the court's reliance on *Newbury v. State* in admitting Pam Paxton's hearsay statement into evidence did not prejudice the defense. Any ignorance of the new case did not affect the outcome of the court's ruling as the legal principles discussed in *Newbury* were not overturned and were still valid principles of law at the time of Appellant's trial. Further, as the underlying facts of the prior manslaughter conviction were properly admissible to prove the aggravator of continuing threat, counsel's failure to point out any potential *Brewer* problems was not indicative of ineffective assistance.

■ Trial counsel was a seasoned lawyer, well versed in the criminal law, who zealously represented Appellant's interests. He presented eight (8) witness on behalf of Appellant during the second stage of trial. He filed numerous motions attempting to limit the State's evidence during the second stage of trial. Appellant has failed to show that absent defense counsel's conduct during the sentencing stage, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Boyd,* 839 P.2d at 1375.

### PROSECUTORIAL MISCONDUCT

■ Appellant further alleges that comments made by the prosecution during the closing arguments of both stages of trial denied his constitutional right to a fair trial. Appellant asserts that the prosecutor improperly influenced the outcome of the trial by intentionally seeking to relieve the jurors of personal responsibility for imposing the death sentence, by commenting on the sentence imposed for the prior manslaughter conviction, by commenting on the failure of the defense to call witnesses during the first and second stage of trial to rebut the State's evidence, by injecting his personal opinion and attacking Appellant in an attempt to inflame the passion and prejudice of the jury, and by arguing facts not in evidence. Alleged errors of prosecutorial misconduct should not, on an individual basis, serve as cause for reversal. *Abbott v. State,* 719 P.2d 1289 (Okl.Cr.1986). Such allegations of error should not cause reversal unless their cumulative effect was such as to deprive the defendant of a fair trial. *See Williams v. State,* 658 P.2d 499 (Okl.Cr.1983). A review of the alleged instances of misconduct in the present case shows that Appellant was not denied a fair trial.

■ Only the first alleged misstatement drew a contemporaneous objection from the defense. Contrary to Appellant's argument, we do not read the prosecutor's comment as an expression of personal opinion on the appropriateness of the death sentence and an attempt to lessen the jury's responsibility for the death sentence by

spreading the responsibility between the jurors and the State. In the sentencing stage of a capital trial, aggravating and mitigating circumstances are to be discussed. The prosecution has the right, to not only discuss the evidence from his standpoint and all the reasonable inferences arising therefrom, but also to argue the evidence in aggravation. *Nguyen v. State*, 769 P.2d 167, 172 (Okl.Cr. 1988). The prosecution may also make recommendations as to punishment. *See Hammer v. State*, 760 P.2d 200, 204 (Okl.Cr.1988). The comments in the present case were well within the allowable bounds of closing argument.

 The remaining comments were not met with an objection, therefore, we will review only for fundamental error. *Harvell v. State*, 742 P.2d 1138, 1142 (Okl.Cr.1987). During the second part of the State's sentencing stage closing argument, the prosecutor responded to comments made by defense counsel concerning the events resulting in Appellant's prior manslaughter conviction. He stated that twenty-five (25) years ago, Appellant received a four (4) year sentence for shooting an unarmed man in a card game. The jury was then asked whether this sentence would be appropriate for the crime today. While this Court has found it improper to urge the jury to sentence out of revenge, *Sier v. State*, 517 P.2d 803 (Okl.Cr. 1973), it is a general rule that otherwise improper prosecutorial remarks are not grounds for reversal where they are invited, provoked or occasioned by defense counsel or are in reply to this statements. *Teafatiller v. State*, 739 P.2d 1009, 1010 (Okl.Cr.1987); *Neal v. State*, 506 P.2d 936, 942 (Okl.Cr. 1973).

 Further, we find no fundamental error in comments made during both the first and second stages of trial that Appellant failed to call certain witnesses to testify in his behalf. This Court has held that where a person might be a material witness on a defendant's behalf and the accused neither places him on the stand nor accounts for his absence, failure to produce him as a witness is a legitimate matter for comment during the State's argument. *Trice v. State*, 853 P.2d 203 (Okl.Cr.1993). Derogatory name calling and unfair characterizations of the accused have not been condoned by this Court. However, comments that Appellant was a "world class criminal" and the implication that he was a bully for slapping around a woman roughly one third of his size was proper commentary on the evidence and not so prejudicial as to have affected the outcome of the trial. Finally, comments that "we don't know why it (the prior murder charge) was dismissed" were properly based upon the record as no evidence concerning the basis for the dismissal was introduced.

### *MANDATORY SENTENCE REVIEW*

 Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.1981, § 701.12. The jury found the existence of three (3) aggravating circumstances; 1) that the defendant was previously convicted of a felony involving the use or threat of violence to the person; 2) that the defendant knowingly created a great risk of death to more than one person; and 3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. The first aggravating circumstances was supported by a judgment and sentence for a 1965 first degree manslaughter conviction.

The second aggravator found, that the defendant knowingly created a great risk of death to more than one person, was supported by Appellant's use of deadly force upon his three (3) victims. Appellant shot three (3) people at close range inside a small frame house and pursued both Linda Neal and Edward Peters in an attempt to further harm them. *See Stouffer v. State*, 738 P.2d 1349, 1361 (Okl.Cr.1987).

In evaluating the third aggravating circumstance found, whether there is a proba-

bility that the defendant will commit acts of violence which will constitute a continuing threat to society, we have held that the murder for which the appellant was convicted, and evidence of the callousness of his actions, can be considered as supporting evidence. *Fox v. State,* 779 P.2d 562, 577 (Okl.Cr.1989); *Fowler v. State,* 779 P.2d 580, 589 (Okl.Cr. 1989); *Robison v. State,* 677 P.2d 1080, 1088 (Okl.Cr.1984), *cert denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). This aggravating circumstance may also be proved by evidence of unadjudicated criminal acts. *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987) *cert. denied* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987).

Here, the State presented evidence that in 1964 while at a card game Appellant shot and killed an unarmed man. Witnesses at the game testified that the victim, who had in no way provoked Appellant, was shot with a pistol at close range. Evidence was also presented that in 1979 Appellant shot and killed his wife as his young daughter watched. We find this evidence of prior acts of violence, together with his killing of Donna Kay Neal, sufficient to support the jury's finding of the continuing threat aggravating circumstance.

Mitigating evidence was presented by Appellant in the form of eight (8) witnesses who testified to the following: that Appellant is sixty-one (61) years old; that he is the sole support of this thirteen (13) year old daughter, helps to support his seven (7) year old daughter and his ninety-seven (97) year old mother; Appellant has family and friends that love and care for him; that Appellant expects to receive a life sentence; that Appellant was an active and respected member of a local labor union. This evidence was summarized into six (6) factors and submitted to the jury for their consideration as mitigating evidence.

Upon our review of the record and careful weighing of the aggravating circumstances and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate. Under the record before this Court, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp. 1987, § 701.13(C), in finding that the aggravating circumstances outweighed the mitigating evidence. Accordingly, finding no error warranting reversal or modification, the judgment and sentences for First Degree Murder, Shooting with Intent to Kill, Discharging a Firearm with Intent to Kill and Possession of a Loaded Firearm, After Former Conviction of a Felony (21 O.S.1981, § 1283) are AFFIRMED.

JOHNSON, V.P.J., and STRUBHAR, J., concur.

LANE, J., concurs in result.

CHAPEL, J., dissents.

LANE, Judge: concurring in result.

I concur in the results reached by the majority. However, I disagree with the majority when it sustains the aggravating circumstance of the existence of a probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society. I do so because of the evidence of the death of Appellant's former wife and the treatment of the incident by the prosecutor.

During the second stage, evidence was introduced that Appellant's former wife, Gloria, died as the result of a gun shot wound in 1979. Charges of murder were filed against the appellant and later dismissed. The couple's three year old daughter, Pam, was in the house when the incident occurred. However, she claimed that she had blocked the trauma from her mind, and therefore, she could not testify as to how her mother was killed. To overcome this difficulty, the State sponsored the testimony of an aunt, Laverne Smith, that some hours after the death of Gloria she picked the child up and took her to the aunt's house. Pam was very upset and when asked what was bothering her she replied that her daddy had shot her mother. This was the only evidence that Appellant caused the death of Gloria.

I believe we must distinguish *Newbury v. State*, 695 P.2d 531 (Okl.Cr.1985) from this case on a factual basis. In *Newbury*, a baby sitter was taken from the child's home during the night time by a television repair man. When the child's father returned the baby sitter was gone and the child was in bed asleep. Immediately after the child awoke the next morning the mother asked what happened to the baby sitter, and the child replied that she went with the television man. We found that the child was still under the influence of the event of the baby sitter leaving the child alone to take care of himself and to put himself to bed. We also found that the statement carried an indicia of reliability in that he was not influenced by outside factors.

In the present case, Pam remained at the scene of her mother's death for some time, including at least a part of the time that the investigation of the death was being conducted. She was exposed to the presence of and the conversations of many adults including the police. Pam was then picked up by Zuemac Dunlap, Appellant's sister and taken to her home where she remained with Dunlap's daughter until she was picked up by Smith. It is significant that there is a void in testimony as to the emotional state of Pam until she was picked up by Smith. In *Stanberry v. State*, 637 P.2d 892 (Okl.Cr.1981) at page 895, we said:

> The trustworthiness of a statement should be analyzed by evaluating the facts corroborating the veracity of the statement, the circumstances in which the declarant made the statement, and the incentive he or she had to speak truthfully or falsely; and careful consideration should be given to factors bearing on the reliability of the reporting of the hearsay by the witness. (Citation omitted.)

When I apply this standard to the current facts I believe that the child's exposure to outside influences between the death of her mother and the making of the statement deprive the statement of the degree of trustworthiness necessary for it to qualify under the excited utterance rule.

I am also troubled by comments concerning the death of the former wife made by the prosecutor in closing arguments. The appellant attempted to introduce a copy of the motion to dismiss the former case filed by the State and the order of the court allowing the dismissal. The State gave as its reason for dismissal: "TO BEST MEET THE ENDS OF JUSTICE ... DEFENDANT CLEARED BY POLYGRAPH TEST". This offer was rejected by the trial judge because he decided that the reference to the polygraph test made the instrument inadmissible. During closing argument the prosecutor stated:

> Andy Coats didn't dismiss that case. The Assistant District Attorney did named Robert Mildfelt dismissed it. We have no way of knowing whether Mr. Coats even knew about it or not. And there could be a lot of reasons as to why it wasn't—one of them may have been the fact that Pam Paxton wouldn't talk about it and she was the only eyewitness that witnessed it and who knows. We don't know why it was dismissed. (Transcript p. 1392.)

With this statement the prosecutor introduced unsubstantiated speculation that was contra to the record of the other case and hinted that because the jury did not know why the case was dismissed the appellant was guilty of murder for his former wife's death. I find this unacceptable.

Since I find that this aggravating circumstance should not be sustained I feel that I must follow the standards set forth in *Castro v. State*, 814 P.2d 158 (Okl.Cr.1991) and re-weigh the remaining aggravators to determine if the jury would have sustained the sentence of death. To accomplish this task I adopt the analysis of Judge Lumpkin as to the mandatory sentence review contained in the majority opinion except for that relating to the aggravating circumstance that I find faulty and conclude that the sentence of death should be affirmed.

CHAPEL, Judge, dissenting:

I would like to take this opportunity to note my opinion that the Oklahoma "Flight

Instruction," OUJI–CR 806, should be abandoned. There is no valid reason to ever give such an instruction.[1]

However, the crux of my dissent is from the majority's determination that the use of unadjudicated offenses at the sentencing stage of capital trials is constitutionally permissible. I would join the eight states which currently prohibit the use of this evidence,[2] or alternatively, join the ten states which place restrictions on its use.[3]

In this case, the State presented evidence at Paxton's sentencing stage that Paxton allegedly murdered his wife in 1979. The evidence consisted of a charge which had been dropped[4] and hearsay offered by Laverne Smith, the deceased's sister, to the effect that Pam Paxton told her "my daddy shot my

mama." This Court has elected to allow the admission of such evidence at sentencing stage. *Johnson v. State,* 665 P.2d 815, 823 (Okl.Cr.1983). I cannot agree.

Oklahoma allows unlimited use of this evidence at the sentencing stage of capital trials. *Woodruff v. State,* 846 P.2d 1124, 1141–1143 (Okl.Cr.1993); *Johnson v. State,* 665 P.2d 815, 823 (Okl.Cr.1983) (a final conviction is not necessary before an unrelated criminal offense can be admitted at sentencing because prior criminal activity is relevant to the continuing threat aggravating circumstance). I find both the Oklahoma and the United States Constitutions prohibit the use of this evidence at sentencing, despite the fact that it may be relevant. Our Constitutions prohibit the infliction of cruel and unusual punishment[5] and afford all persons due process

1. First, the instruction "serves no real purpose, as it is a particularization of the general charge on circumstantial evidence, and as the state is free to use circumstantial evidence of flight to argue the defendant's guilt." *Cameron v. State,* 256 Ga. 225, 345 S.E.2d 575, 578 (1986) (Bell, J. Concurring). More importantly, however, evidence that a person left the scene of an alleged crime proves only that he or she departed. "... [I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." *Alberty v. U.S.,* 162 U.S. 499, 511, 16 S.Ct. 864, 868, 40 L.Ed. 1051 (1896). The Supreme Court has "consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Wong Sun v. U.S.,* 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 415 n. 10, 9 L.Ed.2d 441 (1963).

2. The eight states are Alabama, Florida, Indiana, Maryland, Ohio, Pennsylvania, Tennessee, and Washington. Steven P. Smith, *Unreliable and Prejudicial: The Use of Extraneous Unadjudicated Offenses in the Penalty Phase of Capital Trials,* 93 Colum.L.Rev. 1249 (1993) [hereinafter Smith].

3. The ten states are Arkansas, California, Delaware, Georgia, Illinois, Louisiana, Nebraska, Nevada, South Carolina, and Utah. Smith, *supra* note 2, at 1271. "While it is true that a two-thirds majority of states (16) considering the issue have rejected a per se bar on the introduction of this type of evidence, it is also true that *more* than two-thirds of the states (18) have deemed unrestricted use of the evidence unacceptable." *Id.* at 1267 (emphasis in original).

4. To compound the prejudice, the prosecutor told the jury that the reason the charge was

dropped was because the only eyewitness, Pam Paxton (Appellant and the deceased's five year old daughter), "wouldn't talk about it." In fact, the reason the charge was dropped was because Paxton was cleared by a polygraph test. However, because the results of such tests are not admissible, the jury never knew this and instead was led to believe Paxton escaped justice because his young daughter was afraid to testify. This affirmative misrepresentation by the prosecutor was nothing less than prosecutorial misconduct which took away from the fairness and reliability due Paxton in the sentencing stage of his capital trial. Furthermore, I am not convinced it was not error to refuse to allow Paxton to explain why the charges were dropped, as this restricted his constitutional right to put on relevant mitigating evidence. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). "As in *Gardner,* petitioner in this case was not permitted to 'deny or explain' evidence on which his death sentence may, in part, have rested. This error was aggravated by the prosecutor's closing argument.... Therefore, petitioner's death sentence violates the rule in *Gardner.*" *Skipper v. South Carolina,* 476 U.S. 1, 9, 106 S.Ct. 1669, 1674, 90 L.Ed.2d 1 (1986) (Powell, J. concurring), citing *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).

5. Art. II § 9; U.S. Const. amend. VIII. The cruel and unusual clause is offended because this evidence injects arbitrariness into the sentencing proceedings in violation of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Furthermore, even if use of this evidence comports with

of law.[6] The admission of unadjudicated offenses at the sentencing trial violates both Constitutional provisions.

In this case, Paxton was found guilty of killing Donna Kay Neal, discharging a firearm with the intent to kill her sister, and shooting with the intent to kill Edward Peters. Paxton was then provided with a sentencing stage to determine the appropriate punishment for the murder of Donna Kay Neal. However, whether Paxton was sentenced to death for the murder for which he was convicted or for the 1979 murder is impossible to determine. It is possible that his jury did not think death the appropriate punishment for Neal's murder, but appropriate for the 1979 murder which was witnessed by a five year old child whom they believed was frightened into not testifying. The jury may have effectively sentenced this man to die for a crime for which he was neither tried nor convicted. Such a result violates due process, as one may not be punished for a crime without due process of law. It also violates the prohibition against cruel and unusual punishment, as the death sentence may not be imposed in an arbitrary manner.

I agree with the Supreme Court of Washington's decision in *State v. Bartholomew,* 101 Wash.2d 631, 683 P.2d 1079 (1984), which held a statutory provision allowing "evidence of the defendant's previous criminal activity regardless of whether the defendant has been charged or convicted as a result of such activity" in the second stage of capital cases violated both the Federal Constitution and Washington State's Constitution because admission of such evidence was offensive to due process and the prohibition against cruel and unusual punishment.[7] *Id.* 683 P.2d at 1085.

Furthermore, the Court declined to hold the liberal standard of admissibility regarding mitigating factors should be expanded to aggravating factors, noting the admissibility of aggravating factors is limited by federal and state constitutional considerations. *Id.* at 1084. One such consideration is unfair prejudice to the defendant. "[E]vidence prejudicial to the defendant must not be admitted at the sentencing phase." *Id.,* citing *Gregg, supra,* 428 U.S. at 203–04, 96 S.Ct. at 2939 (it is preferable not to impose restrictions on the admission of evidence so long as the evidence does not prejudice the defendant); *Gardner, supra,* (any decision to impose the death sentence must be based on reason rather than caprice or emotion).[8] The United States Supreme Court has yet to

the Federal Constitution, Oklahoma's corollary clause offers more protection as evidenced by the fact that it is written in the disjunctive instead of the conjunctive. Thus, a sentence need only be cruel *or* unusual to offend the Oklahoma Constitution. Of course, I find it both cruel and unusual to allow a jury to sentence someone to death in a manner which results in this Court's inability to determine whether the sentence was properly imposed for the present conviction, or improperly imposed for an unadjudicated crime for which the defendant never received a fair trial. Such arbitrariness fails to comport with both the United States Supreme Court's and this Court's death penalty jurisprudence.

6. Art. II, § 7; U.S. Const. amend. XIV § 1.

7. The Court stated that even if it erred in holding the Federal Constitution was violated by the admission of this evidence, the Washington State Constitution's corollary due process and cruel punishment provisions were nevertheless offended. "The federal constitution only provides minimum protection of individual rights. Accordingly, it is well established that decisions from the federal courts 'do not limit the right of state

courts to accord … greater rights.'" *Id.* (citations omitted).

8. For other states which also prohibit use of this evidence, See *State v. Bobo,* 727 S.W.2d 945, 954 (Tenn.1987) (admission of unadjudicated offenses would violate a number of state constitutional guarantees, including the right to trial by impartial jury, to an indictment or presentation, to confrontation, and against self-incrimination; it would essentially result in a procedure so unfair and prejudicial as to violate due process); *State v. McCormick,* 272 Ind. 272, 397 N.E.2d 276 (1979) (statute allowing admission of unadjudicated offense only if state proves defendant committed it beyond a reasonable doubt at the sentencing stage is still unconstitutional, as defendant would in essence be "tried" of the second murder before a jury which has been undeniably prejudiced by having convicted him of an unrelated murder); *Cook v. State,* 369 So.2d 1251, 1257 (Ala.1979) (defendants are presumed innocent until convicted—this fundamental tenet prohibits use against an individual of unproven charges in the life or death situation presented at the sentencing stage of a capital trial); *Commonwealth v. McCoy,* 405 Pa. 23, 172 A.2d 795, 799

decide this issue. However, at least two former Supreme Court Justices have found the admission of this evidence offensive. See *Williams v. Lynaugh*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987) (Marshall, J., joined by Brennan, J., dissenting from denial of certiorari), stating that "imposition of the death penalty in reliance on mere allegations of criminal behavior fails to comport with the constitutional requirement of reliability." 484 U.S. at 938, 108 S.Ct. at 313. Justices Marshall and Brennan further warn there is serious doubt as to whether a State may ever introduce such evidence consistent with the Eighth and Fourteenth Amendments, given the Supreme Court's jurisprudence determining death is qualitatively different from other punishments. 484 U.S. at 939, 108 S.Ct. at 314. See also, *Coleman v. Risley*, 839 F.2d 434, 504 (9th Cir.1988) (Reinhardt, J. dissenting) (because of the importance of the "quality" of the information relied on by a capital sentencer, and because of the centrality of the defendant's record in capital sentencing, the Constitution does not permit the capital sentencer to rely on unadjudicated offenses).

I find the reasoning in the authorities listed above persuasive and would prohibit evidence of unadjudicated offenses at sentencing in capital trials. Though less preferable, an alternative to a complete ban would be to place restrictions on the use of unadjudicated offenses at sentencing.[9] Various courts have decided to allow the sentencer to consider unadjudicated offenses only once the sentencer has found the offense was committed beyond a reasonable doubt. See, *People v. Balderas*, 41 Cal.3d 144, 222 Cal.Rptr. 184, 219, 711 P.2d 480, 516 (1985); *Miller v. State*, 280 Ark. 551, 660 S.W.2d 163, 165 (1983). Others require the sentencer to decide by clear and convincing evidence that the evidence of unadjudicated offenses is reliable. See, *State v. Brooks*, 541 So.2d 801, 814 (Pa.1961); *Commonwealth v. Hoss*, 445 Pa. 98, 283 A.2d 58, 69 (Pa.1971); *Johnson v. State*, 292 Md. 405, 439 A.2d 542, 562–63 (Md.1982); *Scott v. State*, 297 Md. 235, 465 A.2d 1126, 1133–36 (Md.1983); *Provence v. State*, 337 So.2d 783, 786 (Fla.1976).

(La.1989); *State v. Cohen*, 1992 WL 68915 (Del.Super.Ct. Mar. 19, 1992). Nevada restricts the use of this evidence to proof of the existence of matters relevant to sentencing but not to prove the existence of a statutory aggravating circumstance. *Crump v. State*, 102 Nev. 158, 716 P.2d 1387, 1388 (Nev.1986). South Carolina requires a limiting instruction to be given that the evidence can only be considered as to the defendant's characteristics, not as proof of the alleged aggravating circumstance(s). *State v. Skipper*, 285 S.C. 42, 328 S.E.2d 58, 62 (S.C.1985), reversed on other grounds, *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). Illinois requires a cautionary instruction when the evidence is uncorroborated. *People v. Devin*, 93 Ill.2d 326, 67 Ill.Dec. 63, 74, 444 N.E.2d 102, 113 (1983); *People v. Whitehead*, 116 Ill.2d 425, 108 Ill.Dec. 376, 388, 508 N.E.2d 687, 699 (1987).

Such restrictions would be preferable to Oklahoma's present position allowing unlimited use of unadjudicated offenses at sentencing. However, the best result would be to prohibit use of such evidence altogether. It is unfathomable to me that only prior convictions can be used in non-capital sentencing procedures,[10] but that evidence of unadjudicated offenses, which may be nothing more than unsubstantiated hearsay, suspicion, and accusation, are admissible when a person's life is in the balance at capital sentencing. Justices Marshall and Brennan addressed this same perplexity within Texas' capital sentencing scheme:

As Texas' prohibition against the use of unadjudicated offenses in noncapital cases suggests, the use of such evidence at sentencing is at tension with the fundamental principle that a person not be punished for a crime that the state has not shown he committed. In the context of capital sentencing, this tension becomes irreconcilable. This Court has repeatedly stressed

9. The citations which follow were recorded in Smith, *supra* note 2, at 1271–1277.

10. 21 O.S.1981 § 51.

that because the death penalty is qualitatively different from any other criminal punishment, "there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." (citations omitted). In my view, imposition of the death penalty in reliance on mere allegations of criminal behavior fails to comport with the constitutional requirement of reliability.

*Williams v. Lynaugh, supra,* 484 U.S. at 937–38, 108 S.Ct. at 313. I would overrule *Johnson v. State,* 665 P.2d 815 (Okl.Cr.1983), and its progeny and hold the use of unadjudicated offenses at the sentencing stage of capital trials unconstitutional, in violation of both Federal and Oklahoma Constitutional due process protections, as well as the prohibitions against cruel and unusual punishment.